THE EMMA F. ANGELL (two cases).

(District Court, E. D. Pennsylvania.   October 21, 1914.)

Nos. 25, 30.

1. SEAMEN (§ 10*)—BURDEN OF PROOF—PROVISIONS.

In a suit by seamen for failure of the owner to provision the ship, in accordance with the shipping articles and as required by statute, the owner has the burden of meeting the accusation by proof that the ship was properly provisioned.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 34–38; Dec. Dig. § 10.*]

2. SEAMEN (§§ 10, 19*)—WAGES—WRONGFUL DISCHARGE.

Seamen, held, on the evidence, to have been furnished with an inadequate supply of provisions on a voyage, and to have been wrongfully discharged in a foreign port before the completion of their term of service, and awarded damages and wages for the full voyage.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 34–38, 83–85; Dec. Dig. §§ 10, 19.*]

In Admiralty.   Suits by James Thomas and by Arthur Johnson against the schooner Emma F. Angell, which have been consolidated. Decree for libelants.

Lionel Teller Schlesinger, of Philadelphia, Pa., for libelants.

Howard M. Long, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge.   To decide a controversy such as this the trier of facts has need of something little short of omniscience. As is to be expected, the real facts cannot be found from the testimony of two men, or sets of men, who are shut up together in a ship and look at everything, not only from different, but antagonistic, points of view.   The main controversy is over the fact as to whether this vessel was properly provisioned.   The contract fortunately is clear. The act of Congress is plain.   If this act is not to be enforced, except in that class of cases in which owners and masters admit dereliction of such a duty, the act might as well never have been passed.   To the credit of American owners and masters, few instances for occasion to apply this law arise.   It goes without saying, however, that any man who would send out a ship without an adequate supply of provisions for the crew could not be expected to hesitate to deny the fact.   Furthermore, if sailors who find themselves at sea without grub are to be denied the protection of the act, because they failed to be amiable under such circumstances, it is of very little practical benefit. A controversy between such unscrupulous masters and sailors in such a dissatisfied, unruly, and ugly mood must evoke a tangle of contradictions which no one can unravel, and produce a whirlpool of charges and countercharges which will swamp any craft which enters it.

[1] Some general rule must be found to afford us a compass by which to steer.   That rule is that, when a controversy arises over the provisioning of a ship in accordance with the shipping articles, the owners and masters must carry the burden of meeting the accusation

by establishing the fact that the ship was properly provisioned. This burden they can easily carry. They are within the principle that the litigant who has control of the proofs must produce them. If innocent owners or masters are unfortunately charged by unruly and untruthful members of their crews with failure to properly provision their vessels, they are in a position to establish the fact of the groundlessness of the charge beyond all fair controversy, and any reasonable owner or master would willingly assume this burden for the general good.

Measured by this rule, the respondents in these cases have not met this burden. The testimony of the libelants and their witnesses is direct and positive, although, of course, it possibly may not be in accord with the real facts. The master and mate have each testified to their belief that the complaints of the crew were groundless, and prompted only by unruliness and a spirit of insubordination. Neither of them, however, has any knowledge of what the men had to eat which could be accepted as evidential. They base the inference that the crew were well fed upon the fact that they themselves had enough, and upon the further inference that cabin and forecastle were served alike, except in the matter of milk. The fact of a supply of proper provisions might have been shown, and the consequence of a failure to meet the testimony of the crew with a show of facts, not opinions, is to have a finding of the fact against the ship.

[2] The same thing may be said of the discharge of the libelants in a foreign port. The captain wanted to get rid of them. This he makes clear enough. They were arrested on a complaint telephoned to a magistrate, or perhaps only to a constable. No one appeared against them. We have not been referred to a copy of the treaty which authorizes arrests of sailors on American ships. It doubtless sets forth what sort of a complaint will justify an arrest, and how it is made. What offenses are within the treaty we do not know, nor do we know what the charge against these men was. There is room to infer that assault and battery is the charge which might, under the treaty, have been made. We know there was no ground for such a charge. There had been an exchange of "sailor talk" between crew and mate, and master and crew. Beyond this it did not go. The captain paid some money over to a constable, who returned him the receipts of the men for $44 each, with the statement that the men had paid the costs and were willing to call quits. This the men deny. On this quoted say-so of a constable, whose name even is unknown, we are asked to find that the men gave up their contract and left the vessel voluntarily. The men deny this, and we are unable to find the fact against them. The receipts are not conclusive, and are open to the explanation which has been given under oath and is not contradicted.

No court is disposed to make any finding which would weaken the discipline necessary to be enforced on ships, or the control of officers over their crews. We simply find that there is direct and positive testimony as to the salient facts, which not only justifies, but unanswered compels, a finding in favor of the libelants as to the question of provisions and discharge, and nothing in the way of evidence to

the contrary. If the findings are not in accord with the real facts in respect of the two points indicated, it is because the evidence of the facts has not been produced.

An order may be drawn incorporating these awards in favor of the libelants and against the respondents:

(1) Full wages for the term of the voyage in accordance with the shipping articles, less the moneys received by each of the libelants, respectively, and a further allowance for all loss and damage, so that the net amounts awarded shall be as follows:

James Thomas.................................................$115.00
Arthur Johnson ..............................................$117.20 .

(2) The allowance to each libelant of costs against respondents.