## GAYNOR v. ATLANTIC GREYHOUND CORPORATION, Appellant.

### No. 10106.

United States Court of Appeals
Third Circuit.

Argued April 17, 1950.

Decided July 14, 1950.

John J. McDevitt, 3d, Philadelphia, Pa. (Peter P. Liebert, 3d, Philadelphia, Pa., on the brief), for appellant.

Wilfred R. Lorry, Philadelphia, Pa. (Charles Lakatos, and Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

This is a civil action for damages for personal injuries sustained by the plaintiff, a citizen of Pennsylvania, as a result of an automobile accident in South Carolina, instituted in the United States District Court for the Eastern District of Pennsylvania, against the defendant, a Delaware corporation. Jurisdiction is based on diversity of citizenship. The suit has been tried twice. At the first trial the jury disagreed. At the second trial the defendant's motion for a directed verdict was denied and the jury returned a verdict for the plaintiff in the sum of $20,000. Motions to set aside the verdict and enter judgment in favor of the defendant and for a new trial were refused and judgment was entered on the verdict, 86 F.Supp. 284. This appeal followed.

Viewing the evidence in the light most favorable to the plaintiff, the following facts were disclosed during the trial: On December 25, 1945, the plaintiff, a seaman, was a passenger on defendant's bus traveling northwestwardly on Route 17 from Charleston, South Carolina, to Walterboro, South Carolina. The night was foggy with drizzling rain. At about 6:30 o'clock P. M. when the bus had reached a point approximately 12 miles from Walterboro it struck a cow on the highway. The bus went off the road and stopped with its rear end down in a ditch, which ran parallel to the two-lane concrete road, and with the front end of the bus off the concrete on the shoulder of the highway. Since the front door of the bus was blocked by weeds and therefore inconvenient as an exit, the driver ordered the passengers to use the emergency door at the rear left-hand side of the bus. The headlights, the spotlight, and the inside lights were lit. The driver secured shelter for the passengers at a nearby farmhouse. The plaintiff remained near the bus with some of the other passengers. After the cow had been removed from the highway, the bus driver returned to the bus and enlisted the assistance of the plaintiff in lighting flares. The plaintiff was requested to place the first one on the shoulder of the road opposite the middle of the bus. While in the act of so doing, he became aware of the fact that automobile lights were coming toward him. He dropped the flare and ran. A 1938 Ford 1½ ton truck, approaching from the opposite direction, came within the glare of the light from the bus headlights and spotlight. The driver of the truck, W. H. Murdaugh, was blinded by these lights. He applied his brakes, and skidded across the highway, striking the plaintiff. As a result, the plaintiff suffered compound comminuted fractures of the right lower leg.

Liability of the defendant was predicated on the alleged negligence of the bus driver in failing to turn off the bus headlights and spotlight after the bus became disabled; in failing promptly to set out adequate

flares; and in permitting forward lights of the bus to shine across the highway blinding the vision of aproaching drivers.

On this appeal the defendant contends that the court erred in refusing its motions for a directed verdict and for judgment n.o.v. since, as it asserts, there was not substantial evidence that the defendant caused the plaintiff's injury. It also urges that the court erred in excluding certain evidence, in denying certain of defendant's points for charge and in charging the jury on proximate cause.

■ The first contention need not detain us long. Since the alleged tort took place in South Carolina the law of that state determines the defendant's liability.[1] Turning then to the law of South Carolina we find that the Motor Vehicle Carriers' Law of that state requires with respect to a disabled vehicle that three lighted flares be placed on the roadway, one each 100 feet forward and behind the vehicle and one at the traffic side of the vehicle, approximately ten feet rearward or forward; that the driver shall not have his lights or spotlights so aimed that the glaring rays are directed into the eyes of an oncoming driver, and that the driver of a vehicle involved in an accident shall take all reasonable precautions to prevent further accidents at the scene.[2]

■ The courts of South Carolina have held that the violation of a statute is negligence per se.[3] But this rule has been qualified. It must also appear that the intent and purpose of the violated statute was to prevent just such a consequence as did occur. The plaintiff must show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him.[4] From the testimony offered on behalf of the plaintiff the jury was justified in finding that the defendant's bus driver left the headlights and spotlight of the bus shining diagonally across the highway after the first accident and that it was the blinding effect of these lights shining in his eyes which caused Murdaugh to drive his truck across the highway and hit the plaintiff. This, if it happened, was a clear violation of the South Carolina statute and was followed by just such a result as the statute was intended to prevent. It accordingly was sufficient to establish negligence on the part of the defendant's driver and the motions for a directed verdict and judgment n.o.v. were, therefore, rightly denied.

■ We turn then to the trial errors alleged by the defendant. The only ones which we need consider involve the refusal of the trial judge to admit evidence offered by the defendant. The first of these involved the testimony of Mrs. Etta Musselwhite. There was testimony that after the bus had hit the cow the bus driver had taken the women passengers to the neighboring farmhouse of Mr. Padgett for shelter from the rain. Mrs. Murdaugh, the wife of the driver of the truck, was riding with her husband at the time the plaintiff was hit. Their three children were with them. At the first trial Mrs. Musselwhite had testified that she was at the Padgett farmhouse when Mrs. Murdaugh and her children came in "much excited and crying, and she said that they were visiting folks and that she told her husband before he had left home to let someone else drive . . . the truck, because he was too drunk to drive, and she saw him when he was going to run into the side of

---

1. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Singer v. Messina, 1933, 312 Pa. 129, 137, 167 A. 583, 586, 89 A.L.R. 1271; Restatement, Conflict of Laws §§ 378, 379, 383.

2. Code of Laws of South Carolina, 1942, Civil Code, Vol. 4, § 8516, part 2, pp. 899, 903–905.

3. Cunningham v. Columbia, N. & L. R. Co., 1914, 96 S.C. 456, 81 S.E. 150, 151; Worrell v. South Carolina Power Co., 1938, 186 S.C. 306, 195 S.E. 633, 641; Eickhoff v. Beard-Laney, Inc., 1942, 199 S.C. 500, 20 S.E.2d 153, 155, 141 A.L.R. 1010.

4. Fisher v. J. H. Sheridan Co., 1936, 182 S.C. 316, 189 S.E. 356, 359, 108 A.L.R. 981; Bell v. Atlantic Coast Line R. Co., 1943, 202 S.C. 160, 24 S.E.2d 177, 183.

the bus, or she thought he was going to run into the side of the bus, and she said, she says, 'Oh my God, stop.' She said that she saw him, how he was driving, and she knew that he was drunk." At the second trial Mrs. Murdaugh in her testimony denied going to the Padgett farmhouse or making any statement. The defendant then offered the testimony of Mrs. Musselwhite as to Mrs. Murdaugh's statement as part of the res gestae and to impeach Mrs. Murdaugh. The trial judge refused to admit the testimony. In so doing we think he erred.

As testified to by Mrs. Musselwhite at the first trial the statement of Mrs. Murdaugh was made very shortly after her husband's truck had hit the plaintiff and while she was visibly under the stress of nervous excitement resulting from the accident. It was, therefore, clearly a part of the res gestae and admissible to prove the facts stated by Mrs. Murdaugh,[5] if they were relevant. The principal fact thus stated was that her husband was "too drunk to drive". This fact, if true, was highly relevant for it offered a second possible explanation of Murdaugh's apparently erratic action in driving across the highway and hitting the plaintiff on the opposite shoulder of the road. There was a sharp conflict in the testimony as to whether the lights of the bus were actually turned on and shining across the highway at the time the plaintiff was hit. The shining of these lights in Murdaugh's eyes was the only explanation of his action which the evidence actually admitted at the second trial disclosed. If evidence offering another explanation, intoxication, had been before the jury it might have found that this was the sole cause of the accident and that the lights of the bus were not a contributing cause because they had previously been turned off.

The plaintiff further urges that the testimony of Mrs. Musselwhite as to Mrs. Murdaugh's alleged statement was properly excluded because the statement would not have been admissible if testified to directly by Mrs. Murdaugh since it involved her opinion as to her husband's state of intoxication but gave none of the facts upon which the opinion was based. There is no merit in this contention. A person who has actual knowledge from observation, as Mrs. Murdaugh had, is competent to testify as to whether an individual is intoxicated. It is not a matter of opinion any more than are questions of distance, size, color, weight, identity, age and similar matters.[6]

The defendant urges that the trial judge also erred in excluding the testimony of two witnesses to the effect that they smelled liquor on Murdaugh's breath immediately after the accident. The evidence would clearly have been admissible in corroboration of Mrs. Murdaugh's alleged statement that her husband was drunk if evidence of that statement had been admitted. Finally the defendant asserts that the trial judge erred in refusing to admit a report of a medical examination of the plaintiff. This related to a prior back injury and was offered only to contradict the plaintiff's denial that he had requested release from maritime service. The matter sought to be contradicted was quite irrelevant to the issues in the case and we think the trial judge did not abuse his discretion in this instance. No useful purpose would be served by discussing the questions raised as to the charge and the refusal of three of the defendant's requests for charge since they were predicated upon the absence of evidence of a second possible explanation of the accident, Murdaugh's intoxication, the exclusion of which we have held to be error. Upon the new trial which we shall direct the defendant will be entitled to offer that evidence and the trial judge will, of course, charge the jury in the light of the evidence before them.

The judgment of the district court will be reversed and the cause remanded for a new trial.

5. Commonwealth v. Gardner, 1925, 282 Pa. 458, 465–466, 128 A. 87, 90–91.

6. Commonwealth v. Eyler, 1907, 217 Pa. 512, 66 A. 746, 11 L.R.A.,N.S., 639, 10 Ann.Cas. 786.