**YATES v. DANN et al.**

**Civ. A. No. 1051.**

United States District Court
D. Delaware.

April 24, 1951.

Henry A. Wise, Jr., of Wilmington, Del. and Abraham E. Freedman (of Freedman, Landy & Lorry), of Philadelphia, Pa., for plaintiff.

Stewart Lynch, Robert H. Barnett, and Samuel Handloff, all of Wilmington, Del., and J. Webster Jones, of Philadelphia, Pa., for defendants.

LEAHY, Chief Judge.

A merchant seaman sued his employer for personal injuries sustained in the course of employment.[1] At trial, at the conclusion of plaintiff's case, defendant moved for a directed verdict and contended there was no right of action as a matter of law. The motion was denied. The case was submitted to the jury, with instructions to answer certain interrogatories, i. e., the jury, if liability was found, was to specify the amounts to be awarded to plaintiff for the various elements of damage he suffered. The jury rendered its verdict for plaintiff in the sum of $910.00, representing his past earnings of 13 weeks at the rate of $70.00 per week. The answers to the other interrogatories failed to make any award whatsoever for the elements of pain and suffering and future impairment in earning capacity. Plaintiff moved for a new trial and requested such a new trial be limited solely to the question of damages. Defendant did not move for a new trial, but filed a motion for judgment notwithstanding the verdict. The present matter is here upon those motions.

1. The facts at trial showed defendant owned and operated the tugboat Neptune which was engaged in servicing a dredge and its auxiliaries which was deepening the channel in the Cape Fear River. The Neptune was manned by a crew of two: by plaintiff, the mate in charge of the vessel, and a deckhand. The deckhand had been employed about April 13, 1946, by Captain Workman[2] and plaintiff assumed he was a qualified seaman.[3]

On April 16, 1946, plaintiff was directed to pick up a string of pontoons near the mouth of Redmond Creek and tow them to a dredge which was operating in the Brunswick River.[4] When the tugboat arrived at the site where the pontoons were located, plaintiff Yates instructed the deckhand–Wood to secure a line from the pontoons to the after bitts on the tug and leave about 100 to 125 feet of slack in the hawser.[5] The Neptune then proceeded to tow the pontoons up the Cape Fear River. After about twenty minutes plaintiff found that the backwash of the tug against the pontoons was impeding the progress of the tow so he summoned the deckhand and ordered him to let out more slack in the hawser.[6] As plaintiff gave his instructions to the deckhand, he sensed the latter was unsteady on his feet and he smelled from liquor. Plaintiff countermanded the order and decided to pay out the line himself.[7] First cutting the engines to half speed so that the vessel was barely making steerage, plaintiff then proceeded to the after deck to pay out more line. It was 10:30 P. M. and dark on the river. The vessel was carrying three running lights not intended for illumination and which did not cast sufficient light over the after deck to enable one to see objects on the vessel clearly. Plaintiff could see his way along the deck to the bitts, but he could not see the rope very clearly.[8]

The practice of letting out more slack in the hawser as plaintiff intended, was a common and usual one;[9] for in practice, the towing hawser was secured to the bitts on the after end of the tug in such a fashion there were at least three and a half extra turns to make certain the line was properly secured;[10] and this practice was to put on as many turns as possible, so, when one or two turns were taken off the bitts, the line would not yet begin to run out.[11,12] When plaintiff reached the bitts

1. Prior to trial, defendant took the deposition of plaintiff and moved for summary judgment, contending that there was no right of action as a matter of law. By order dated February 23, 1949, the motion was denied, and the cause was directed to proceed to trial.

2. Tr. p. 27.

3. Tr. p. 38.

4. Tr. p. 3.

5. Tr. p. 88.

6. Tr. p. 5.

7. Tr. pp. 5, 6.

8. Tr. p. 33.

9. Tr. p. 34.

10. Tr. p. 29.

11. Tr. p. 30.

12. An experiment was conducted in the courtroom by plaintiff who rigged a line

at the after end of the vessel, he took hold of the line and lifted it preparatory to paying it out, taking only a half turn,[13] when the line suddenly started to run out and could not be controlled. Plaintiff let go of the line and attempted to get away when his right ankle was caught in the loop of the line and his leg jammed around the bitts.[14] His leg was so crushed it was almost torn off at the ankle.[15] Several men who had been riding on the tug as passengers came to his rescue. They freed his leg by cutting the line with an axe.[16] There was no first-aid kit on the vessel. Plaintiff lay on deck for about fifteen minutes; his leg was jerking because of shock.[17] One of the passengers took the wheel of the tug and proceeded into Wilmington, N. C., where plaintiff was transferred to the Bullock Hospital.[18] He was thereafter transferred to the US Marine Hospital in Norfolk, Virginia, where he was treated as an in-patient for about six weeks and as an out-patient until September 30, 1946.[19] He returned to work on July 18, 1946, although he was still under doctor's care, because he needed funds for support of his family.[20] The evidence shows he has been unable to do his usual work without considerable difficulty; his leg swells after short periods of use causing considerable pain;[21] because of the severity of the injury his recovery will be slow. It was estimated he would have a 50% permanent disability.[22]

The evidence at trial disclosed if there had been any extra turns on the hawser, as was the general practice, it would not have begun to run out when plaintiff picked up the end of the line as he did.[23] After the accident, and while plaintiff lay on deck in great pain, he said to the deckhand, "My land man, don't you know how to make a line fast?" and the deckhand replied, "This is new work to me."[24]

2. The case was submitted to the jury on two theories of liability: (a) Whether the vessel was unseaworthy because of the incompetence or lack of qualification on the part of the deckhand—Wood; and (b) Whether the employer was negligent because the deckhand failed to properly secure the line to the bitts. I submitted four interrogatories to the jury at the conclusion of my Charge, requiring the jury to itemize damages in the event the jury found for plaintiff. The jury found for plaintiff and rendered the following answers to the interrogatories:

(1) What sum, if any, do you award the plaintiff for loss of wages to date? Answer: $910.00;

(2) What sum, if any, do you award the plaintiff for future impairment to his earning power? Answer: None;

(3) What sum, if any, do you award the plaintiff for pain and suffering past, present and future? Answer: None;

(4) What is your total verdict for the plaintiff? Answer: $910.00.

3. Plaintiff, moving for a new trial and a partial new trial limited to the question of damages, contends the jury having found a verdict in favor of plaintiff on the question of liability (and since that question is not interwoven with the question of damages) defendant should not have benefit of a retrial on an issue which has already been fairly tried and decided by the jury. Defendant moves for judgment notwithstanding the verdict, contending the verdict should have been for defendant as a matter of law assuming all facts and inferences in the light most favorable to

to a miniature set of bitts and when a strain was put on the line, several lays of the line were taken off before the line started to run out; then plaintiff stopped the line from running by replacing one turn on the bitts. See Tr. p. 34.

13. Tr. p. 84.

14. Tr. p. 9.

15. Tr. pp. 11, 12.

16. Tr. p. 12.

17. Tr. p. 12.

18. Tr. p. 13.

19. Tr. p. 15.

20. Tr. p. 15.

21. Tr. pp. 16, 17.

22. Tr. p. 44.

23. Tr. p. 30.

24. Tr. p. 32.

plaintiff. Defendant, however, did not file any motion for a new trial. Under orthodox procedure defendant therefore is foreclosed from arguing that any of my rulings were in any way erroneous. Thus, the issues presented by defendant's motion for judgment notwithstanding the verdict are:

(a) Is there any evidence of a lack of qualification or competency on the part of the deckhand which would render the vessel unseaworthy?

(b) Does the evidence disclose that the deckhand improperly rigged the towing line to the bitts thereby rendering the defendant negligent? And, the issue raised by plaintiff's motion is:

Where the jury renders an award in favor of plaintiff on the question of liability but fails to consider all of the elements of damage as instructed by the Court, should a new trial be granted and such new trial be limited solely to the question of damages?

■■ 4. Defendant's motion for judgment notwithstanding the verdict concedes all facts and deducible inferences must be construed favorable to the party awarded the verdict. Nevertheless, defendant argues error in admitting the statement of the deckhand—Wood as to his lack of competency and qualification. Defendant has no standing to make such an argument. Since no motion for a new trial was filed by defendant he is bound by the evidence in the record and is not in a position to challenge any ruling on the evidence. But, suspending the application of such traditional rules, I think properly I admitted the statement

of the deckhand under the doctrine of res gestae.[25] Here, the statement was made within one-half hour after the accident and while both men were still affected by the stress of the dramatic moment of injury involving a crushed ankle.

5. The merits of the respective motions I shall now consider, by first examining the nature of shipowner's duties to seamen.

■■ Under maritime law, prior to the Jones Act,[26] the shipowner was obligated to furnish and maintain a safe and seaworthy vessel throughout the entire period of the seaman's employ.[27] It has been an absolute and continuing obligation which does not depend upon the exercise of reasonable care.[28] Obligation has been defined as an inalienable and non-assignable one.[29] While such was the obligation under maritime law, shipowner, however, was not liable in damages for injuries caused solely by the negligence of a fellow servant. This immunity was dissolved by the enactment of the Jones Act which provided shipowner was liable for any and all injuries "resulting in whole or in part from the negligence of the officers, agents or employees" of the shipowner. Remedy for negligence provided by the Jones Act is not an alternative to the one afforded by general maritime law; it is a cumulative remedy; and the seaman is free to plead either or both in the same action.[30] In short, a seaman is entitled to recover an indemnity if his injuries were sustained as a result of unseaworthiness of the vessel or the negligence of the shipowner, or his officers, agents, or employees.[31]

---

25. In the recent case of Gaynor v. Atlantic Greyhound Corp., 3 Cir., 183 F.2d 482, the Court of Appeals in an analogous situation held it was error for the Court below to exclude a statement made soon after the accident under similar circumstances.

26. 46 U.S.C.A. § 688, Act June 5, 1920, § 33.

27. The Osceola, 189 U.S. 158, 159, 23 S. Ct. 483, 47 L.Ed. 760.

28. Pacific-American Fisheries v. Hoof, 9 Cir., 291 F. 306; Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490; The Seeandbee, 6 Cir., 102 F.2d 577.

29. Sutherland v. Buckeye Cotton Oil Co., D.C., 259 F. 909.

30. McCarthy v. American-Eastern Corporation, 3 Cir., 175 F.2d 724, certiorari denied 338 U.S. 868, 70 S.Ct. 144.

31. As to all this, defendant urges plaintiff is not entitled to the benefits of the Jones Act because he was in charge of the vessel at the time of the accident. This contention was rejected in Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254, where the captain of a tugboat met his death on the waters of the Ohio River through the negligence of a pilot employed to navigate the tug. It

■■■ 6. I think the vessel, in the case at bar, was unseaworthy because of the deckhand's lack of qualification and competence. The term "seaworthiness" implies a vessel which is not only staunch and strong and suitable in every respect for the voyage, but also a crew which is adequate in number and competent to meet all of the exigencies of the intended voyage.[32] The evidence discloses defendant failed to furnish a seaworthy vessel. Deckhand—Wood was engaged by Captain Workman[33] and no evidence was offered by defendant as to what, if any, qualifications the deck-hand possessed for the job. His subsequent failure to rig the line in accordance with the general practice indicates his lack of qualification and competence. This is further demonstrated by his spontaneous admission to plaintiff "the work was new to him". His failure to rig properly the line, and his admission of incompetency are each sufficient to prove his lack of qualification and it justified to the jury the vessel was unseaworthy because of that master fact.[34] In addition, evidence demonstrated the deckhand was negligent in failing to secure properly the towing line to the bitts. This

was there contended that, as captain of the vessel, he was not a seaman and not entitled to the benefits of the Act. The Supreme Court rejected that contention (Mr. Justice Cardozo) holding the Act must be construed most liberally in favor of all those who man the vessel and this included all officers and master of the vessel, as well as the unlicensed members of the crew.

32. In re Pacific Mail Steamship Company, 9 Cir., 130 F. 76, 82, 69 L.R.A. 71, the law on this point was reviewed:

"It is, as was said by Judge Hawley in Re Meyer (D.C.) 74 F. [881] 885, 'the duty of the owners of a steamer carrying goods and passengers, not only to provide a seaworthy vessel, but they must also provide the vessel with a crew adequate in number, and competent for their duty with reference to all the exigencies of the intended route'; not merely competent for the ordinary duties of an uneventful voyage, but for any exigency that is likely to happen, such, for example, as unfortunately did happen in the present case—the striking of the ship on a reef of rocks—and the consequent imperative necessity for instant action to save the lives of passengers and crew. The duty rested upon the petitioner to be prepared for such an emergency, not only by reason of the statute cited, but by the general maritime law. In the case of The Gentleman, Olcott, 115, Fed.Cas.No.5,324, it was held that the owners were liable for furnishing an inadequate crew, which they shipped at the Gambia river, West Africa, large enough in numbers, but sick with fever. In Tait v. Levy, 14 East, 482, it was held that, where the captain did not know the coast, and entered the enemy's port, and was captured, the vessel was 'incompetently fitted out,' because there was no proper master for the purpose of the voyage. In Parsons v. Empire Transportation Company, 111 F. 202, 208, 49 C.C.A. 302, we held that, where the owners appointed an incompetent superintendent to manage ships in Alaskan waters, they were not entitled to a limitation of liability for loss arising from sending out a barge in wintry and stormy weather. *There can, in our opinion, be no doubt that the crew of a ship must be not only sufficient in numbers, but also competent for the duties it may be called upon to perform.*" (Emphasis supplied.)

See also Hartford & New York Transp. Co. v. Rogers & Hubbard Co. (The Spartan), 2 Cir., 47 F.2d 189, 1931 A. M.C. 1; Peninsular & Occidental S. S. Co. v. N. L. R. B., 5 Cir., 98 F.2d 411, 1938 A.M.C. 1397; where it was held the seaworthiness of the vessel depends, inter alia, upon the competency of its personnel and this meant that not only must the individual members of the crew be efficient in the performance of their duties, but they must be able to operate properly as a unit; and The Rolph, D.C., 293 F. 269, affirmed, 9 Cir., 299 F. 52, certiorari denied 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468.

33. Tr. p. 27.

34. Defendant's failure to come forward with proof on this point is another factor which leads to the same conclusion. In Miller v. Lykes Bros.-Ripley S. S. Co., 5 Cir., 98 F.2d 185, 186, the issue was whether the vessel was properly provisioned; the Court placed the burden of proving that fact upon the shipowner, and said: "The rule as to the burden of proof in this respect is that the owner or master must show that the ship was properly provisioned. *This burden is within the principle that the litigant who has control of the proof must produce it.* The Emma F. Angell, D.C., 217 F. 311." (Emphasis supplied.)

negligence is imputable to defendant. Facts show when plaintiff proceeded aft to lengthen the hawser, if the line had been properly rigged by the deckhand, it would not have begun to run out when plaintiff lifted the line up as he did.[35] As stated before the customary practice was to put at least three and a half or more turns around the bitts so when one or more turns were lifted from the line, it would nevertheless not begin to run out.[36] Defendant argues there are inconsistencies in plaintiff's testimony in connection with the manner in which the line should have been rigged, but examination of the record indicates there is no such inconsistency in the evidence. The record demonstrates the deckhand failed to secure the line in a proper or customary manner. I have, therefore, concluded defendant's motion for judgment notwithstanding the verdict is lacking in merit and should be denied because the issue of defendant's liability was fairly submitted to the jury on competent evidence and the jury decided that issue in favor of plaintiff. That finding should not be disturbed.

 7. There remains for decision plaintiff's motion for a new trial limited to the question of damages. I conclude on this phase of the matter where the verdict of the jury is against the defendant on the question of liability but fails to include all of the elements of damages as instructed by the Court, a new trial should be granted solely on the question of damages. I charged the jury in detail with respect to the questions of unseaworthiness and negligence, and then instructed them if they should find those issues in favor of plaintiff, consideration should then be given to the question of damages. I gave, what I consider was, a full and complete charge on the question of damages; and, with respect to the element of pain and suffering, I stated:

"Now I come to the question of damages in the event that you find a verdict on be-

half of the plaintiff. *If you find that the plaintiff is entitled to damages, you must award him a sum of money for all the pain and suffering, both in body and mind, which you find he may have undergone in the past and which you find he may undergo in the future as the result of his injuries* in such amount as you will find reasonably compensates him for all such pain and suffering. There is no yardstick to measure the monetary value of pain and suffering but you will use your common experience and good judgment in arriving at a sum of money which will reasonably compensate the plaintiff for such pain and suffering."

At the conclusion of the charge, I submitted the four interrogatories noted; and clearly from the answers, the jury did not comply with my instructions relative to the issue of damages. The award of $910.00 simply represents plaintiff's claim for 13 weeks loss of wages in the past at the rate of $70.00 per week, without any mitigation. The answers to the remaining interrogatories indicate the jury simply did not follow the instructions. Since the issue of damages is entirely independent from that relating to the liability of the defendant, a new trial should be had limited solely to the question of damages. This was the type of situation which the draftsmen of the Federal Rules of Civil Procedure had in mind in making provision for the retrial of less than all of the issues, where, in a previous trial, some of the issues might have been correctly decided and others not.

 Under Fed.Rules Civ.Proc. rule 59, 28 U.S.C.A., the trial judge has discretion to order a partial new trial as to one or more issues where it appears the issue in question is severable from and not interwoven with the remaining issues. The theory behind this rule is a party who has already had his day in court as to a particular issue may not have another opportunity to relitigate the same point unless a partial new trial will result in a miscarriage of justice.[37] I think F.R. 59 was intended

35. Tr. p. 34.

36. Tr. pp. 29, 30.

37. In order to determine the full purport of the rule and the intention of the draftsmen, I briefly refer to the proceedings leading to the adoption of the Federal Rules in an APPENDIX attached to this opinion where the precise problem here under consideration was

to prevent the retrial of any issue already properly decided, and to limit any new trial only to those issues which are incorrectly decided or not decided at all. Since the adoption of the Federal Rules of Civil Procedure, courts have indicated a trend to limiting retrials to specific issues whenever possible, particularly in personal injury cases where the issue of damages is independent from that relating to liability.[38] Tompkins v. Pilots Association for Bay and River Delaware et al., D.C., 32 F.

considered. The statements of others are included.

[38]. In Chesevski v. Strawbridge & Clothier, D.C., 25 F.Supp. 325, the jury rendered a verdict for plaintiffs, but the latter moved for a new trial upon the ground of inadequacy and requested the retrial be limited solely to the question of damages. Judge Avis, granting that motion after a careful examination of the rule and the authorities, said:

"It is clear that this Court has the power to set aside a verdict for inadequacy and order a new trial on that one question. This is established by the cases in the Federal courts as well as in the courts of the State of New Jersey. See Gasoline Products Co., Inc. v. Champlin Refining Co., 283 U.S. 494, 499, 51 S.Ct. 513, 75 L.Ed. 1188; May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830, 842; Robinson v. Payne, Director General [& C.], 99 N.J.L. 135, 122 A. 882.

"The principle is exhaustively dealt with by Judge Forman in a memorandum, filed February 15, 1934 with the Clerk of this court, in the case of Ella Albrecht et ux. v. Public Service Interstate Transportation Company et al. (not reported).

"Rule 59(a) of the Rules of Civil Procedure for the District Courts of the United States in part provides:

"'A new trial may be granted to all or any of the parties and on all or part of the issues * * *.'

"My examination of the evidence submitted at the trial convinces me that there can be no need of another trial on the question of negligence or contributory negligence, and I agree completely with the determination of the jury on these points. The plaintiffs were entitled to a verdict."

In Dodson v. Raker, D.C., 1 F.R.D. 368, a partial new trial was requested because of the inadequacy of the verdict which the Court granted upon the following grounds:

"This case is before the court upon plaintiff's motion for a new trial on the ground of asserted inadequacy of damages allowed plaintiff by the jury's verdict. There is no serious question but that the damages allowed are entirely inadequate, if plaintiff is entitled to a verdict at all; nor that plaintiff is entitled to a new trial in view of such inadequacy, if the evidence was sufficient to go to the jury on the question of defendant's liability.

"The court overruled defendant's motion for a directed verdict at the close of the plaintiff's evidence and at the close of all the evidence in the case and is of opinion now that plaintiff's evidence made out a strong case for the jury on the question of liability. I have no doubt that plaintiff is entitled to a new trial.

"But plaintiff, by his motion, seeks to have a new trial granted as to the single issue of damages, under authority of Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and to let the judgment on the verdict stand, in so far as it determines the defendant's liability.

"The suit is for damages alleged to have been suffered by plaintiff from injuries to his person and automobile resulting from a collision between his automobile which he was driving and the automobile being driven by the defendant. * * *

"The instructions placed clearly before the jury the issue of defendant's negligence proximately causing the accident and the issue of the plaintiff's contributory negligence. Both issues were necessarily found in favor of the plaintiff before the jury could, under the instructions, consider the question of damages.

"It would seem that though the verdict in this case is a general verdict finding the issues in favor of the plaintiff and fixing his damages, the issues of defendant's actionable negligence, the plaintiff's contributory negligence or lack of contributory negligence, and the amount of damages that the plaintiff was entitled to recover, if entitled to a verdict at all, were so separated by the instructions as to be considered separable issues within the meaning of Rule 59 which permits a new trial to be granted on all or part of the issues.

"Defendant insists that the inadequacy in the amount of damages allowed by the verdict is obviously the result of a compromise on the question of liability. That could possibly be true. Yet, as I view the evidence, there seemed to be such

Supp. 439, 441, reports a sound opinion. In that case a deckhand on a vessel fell through an open gangway and was drowned. The suit was brought under the Jones Act. The jury, without finding specifically for the plaintiff, answered interrogatories, the effect of which required the verdict to be entered in favor of the plaintiff; but the jury could not agree on the question of damages. Judge Kirkpatrick ordered a new trial solely on the question of damages and said: "There is no doubt whatever, that, when there has been a general verdict in favor of the plaintiff, the Court may in its discretion grant a new trial limited to the issue of damages only. This may be done where a resubmission of the issue of damages is necessary because the jury has agreed upon a grossly excessive or inadequate amount, and there is no reason why it should not be done where a resubmission is made necessary by the fact that the jury has been unable to agree on any damages. The practice was not uncommon prior to the adoption of the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the Rules specifically warrant it. See Rule 59(a). The only limitation of importance upon the Court's discretion is that partial retrial for the purpose of fixing the amount of damages ought not to be allowed where the issues of liability and damages are so inextricably related that a proper verdict upon the one cannot be reached without taking into account the evidence relating to the other. * * * The present suit is a death case. Evidence going to show the manner in which the drowning occurred could not conceivably have the slightest bearing upon the amount of the plaintiff's pecuniary loss. Upon all issues relating to liability, the defendants had their day in Court at the first trial, with full opportunity to submit their defenses. *It would seem a grave injustice to a plaintiff, if, having submitted her claim to a jury and having obtained a verdict in her favor, she should be compelled to risk another trial with a possibility of an adverse verdict solely because the jury failed to agree upon how much her loss was.*" (Emphasis supplied.)

I adopt this principle with a like result in the case at bar. Defendant, here, has had a fair trial on the issue of liability and it would be, I think, obviously grossly unfair to plaintiff, as well as contrary to the spirit of F.R. 59, to require a retrial of the question of defendant's culpability which has already been decided by the jury in plaintiff's favor.[39] Moreover, as Judge Kirkpatrick pointed out in the Tompkins case, a grave injustice would occur to a plaintiff if, having submitted the question of liability to a jury, and having obtained a favorable verdict, a plaintiff should be compelled to risk another trial, with a possibility of an adverse verdict, solely because a jury failed to take into consideration all of the elements of damage as clearly instructed by the Court.

Defendant's motion will be denied and I shall decide in favor of plaintiff's motion and grant a new trial, limited solely to the issue of damages.

## APPENDIX

In the course of the symposiums conducted in Washington and New York, Judge Calvin Chesnut made the following pertinent observation (Reported in "Federal Rules of Civil Procedure Proceedings of Institute—Washington and New York," p. 85): "It is my personal preference, certainly, to have a jury decide fact issues, and the possible inefficiency of jury verdicts, in cases where a jury would likely

---

slight question of defendant's negligence and such slight evidence of plaintiff's contributory negligence, it seems scarely reasonable that the jury could have divided seriously on these issues. * * *

"I am of opinion that a new trial should be granted and that the new trial should be limited to the issue of the amount of the damages the plaintiff is entitled to recover. It is so ordered."

39. The foresight of submitting interrogatories to the jury eliminates the necessity for speculation as to whether the jury did or did not take into consideration all elements of damage as instructed by me in the charge. Answers to the interrogatories indisputably show the jury did not make allowance, at least, for the elements of pain and suffering attendant to a crushed ankle, a most substantial element of damage in this case.

be swayed by sympathy or other considerations which would influence them as against the strict logic of the case, can be checked under these new rules by the greater opportunity that the trial judge has to prevent a wrong verdict of the jury by submitting to them special interrogatories to be answered along with the general verdict, *and also by granting a partial new trial instead of a whole new trial.*"

In pointing out the practical effect of limiting a retrial to specific issues, Judge Chesnut said (p. 86): "Then you have, as I say, *special interrogatories to a jury to check the illogicality or the unreasonableness of a general verdict which might be thought to be based on sympathy or considerations other than the strict application of the law* to the facts of the case. You have the opportunity on the part of the trial judge to grant a partial new trial, as for instance in a negligence case; *if the damages are excessive he can grant a new trial as to damages, without requiring the plaintiff to reprove and establish negligence.*"

Mr. Robert G. Dodge, a member of the Advisory Committee to the Supreme Court, expressed the views of the Committee in the New York and Washington proceedings (p. 183): "We did not attempt, in the draft of the rule, to state the grounds upon which a new trial might be had. There was some thought of doing that, but it was found to open such a vast field that it was deemed better merely to provide that a new trial may be had on the same grounds that formed the basis for a new trial in actions at law or for rehearing in suits in equity under the prior practice. *There is a provision in the rule for ordering new trials on part of the issues only, leaving the verdict to stand upon the rest.* That has aroused considerable comment. The practice is provided for in several states; in others it is unknown. We are familiar with it in Massachusetts, *as where, in a tort action, the verdict is believed to be correct on the issue of liability but improper on the question of damages;* or where, in a will case, the jury finds correctly on the issue of soundness of mind but improperly on the issue of undue influence; or where a case

involves two pieces of property and the verdict is right as to one of them."

The rationale and the advantages of limiting a retrial to specific issues is dealt with by Moore (Federal Practice, Vol. 3, p. 3097): "The special verdict compels detailed consideration. But above all it enables the public, the parties and the Court to see what the jury really has done. The general verdict is either all wrong or all right. A single error completely destroys it. *But the special verdict enables errors to be localized so that the sound portions of the verdict may be saved and only the unsound portions be subject to redetermination through a new trial.* (Compare Rule 59(a) permitting partial new trial—Sunderland, Verdicts, General and Special (1920) 29 Yale L.J. 243)."

Where the jury fails to follow the instructions of the Court (as in my case above) Moore points out a new trial should be granted as to those issues concerning which the jury erred (p. 3099): "Of course, *if the jury fails to find on an issue actually submitted to it,* since the right to a jury trial thereon has not been waived, *a new trial, at least as to such issue, is necessary * * *"*.

In formulating F.R. 59, the Advisory Committee gave consideration to the practice which was followed in a number of states. The rules which were consulted and referred to by the Committee are set forth below F.R. 59:

North Dakota Laws 1927, Ch. 214: "Upon an appeal from a judgment or order the Supreme Court may reverse, affirm or modify the Judgment or order and as to any and all of the parties; and may, if necessary or proper, order a new trial of the entire cause or of some specific issue or issues, and if the appeal is from a part of the judgment or order may reverse, affirm or modify it as to the part appealed from. If, in the consideration of any appeal, it becomes apparent to the Supreme Court that some issue involved in the case has not been tried, or if tried has not been determined, by the trial court, and that it is necessary or desirable to a proper disposition of the case on appeal that such issue

be determined, the Supreme Court may remand the case to the District Court for the determination of such issue, without relinquishing jurisdiction of the appeal, and the Supreme Court may hold the determination of the appeal in abeyance until such issue has been determined by the trial court and the determination certified to the Supreme Court * * *".

Mississippi Supreme Court Rules: Rule 12: "In case a judgment is reversed, and a new trial granted, it shall be only a new trial of the question or questions with respect to which the verdict or decision is found to be wrong, if separable."

Rule 13: *"When a judgment is reversed and a new trial ordered because the damages are excessive or inadequate, and for no other reason, such judgment shall be set aside only in respect of damages and shall stand good in all other respects."*

Annotated Code of Maryland, Bagby 1924, Art. 5, §§ 25–26;

§ 25: "If it appears to the Court of Appeals that a reversible error affects a severable item or part only of the matters in controversy, the Court may direct final judgment as to the remaining parts or items thereof, and may direct a new trial as to the said severable part or item only.

"A judgment reversed and a new trial awarded as to the interest item and affirmed as to the remaining amount, under this section. Bucher v. Federal B. B. Club, 130 Md. [635] 644 [101 A. 534]."

Illinois Statutes Ann. Vol. 18, 104.068, § 68(b), S.H.A. ch. 110, § 192(3)b: "If, upon such reversal by the Appellate or Supreme Court, it shall appear that damages should have been assessed in the trial court a partial remandment solely for the purpose of assessing such damages, shall be ordered."

California Code of Civil Procedure, Deering 1937, § 657:

When new trial be granted. "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party *. * *".

Arizona Revised Code Ann., Struckmeyer 1928, § 3852:

"When a new trial is granted it shall only be a new trial of the question in respect to which the verdict or decision is found to be erroneous if separable; *when a new trial is ordered because the damages are excessive or inadequate, and for no other reason, the verdict shall be set aside only in respect of damages, and shall stand in all other respects.* (§§ 597–8, R.S. '13, cons. & rev.)"

"When a faulty instruction can only affect the measure of damages, a new trial may be awarded on the amount of damages only."