808 A.2d 863 (2002)
354 N.J. Super. 569
Arthur SOULES, Plaintiff-Appellant,
v.
MOUNT HOLINESS MEMORIAL PARK and Gene Dallago, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2002.
Decided November 6, 2002.
*864 Matthew R. Grabell, Hackensack, argued the cause for appellant (Grabell & Associates, attorneys; Mr. Grabell, on the brief).
Frederick C. Mezey, Freehold, argued the cause for respondents (Mezey & Mezey, attorneys; Mr. Mezey, on the brief).
Donna Arons, Trenton, argued the cause for amicus curiae New Jersey Division on Civil Rights (Ms. Arons, Deputy Attorney General, on the brief).
Before Judges CONLEY, NEWMAN and CARCHMAN.
The opinion of the court was delivered by CONLEY, P.J.A.D.
This is plaintiff's appeal from a grant of summary judgment in favor of the defendants. Plaintiff, an employee of defendant, Mt. Holiness Memorial Park Organization (Park), developed cancer requiring the removal of a kidney, "five inches around it, the adrenals, the lymphs and one rib." He was absent from work for over eight months. Before plaintiff was cleared to return to work, Park hired another employee to replace him. Plaintiff claims that he was told his position would remain open until he recovered. Park asserted that the position was held open as long as possible, and when plaintiff failed to return, it had no other choice but to hire a new employee. This defense, of course, raises an issue of whether Park reasonably accommodated plaintiff's condition. Viscik v. Fowler Equipment Co., Inc., 173 N.J. 1, 19-20, 800 A.2d 826 (2002) (reasonable accommodation is an issue in a handicap discrimination case "in which an employer, rather than defending on the grounds that the employee was terminated for legitimate, non-discriminatory reasons, proffers the employee's inability to perform the job as a defense.").
However, the motion judge granted Park summary judgment in favor of the defendant based upon his conclusion that plaintiff had failed to prove the first prong of his prima facie burden, i.e., that he was "handicapped" within the meaning of the Law Against Discrimination (LAD). He based this conclusion upon his finding that plaintiff's handicap was temporary, focusing upon the eight month recuperative period. We reverse.
The facts viewed most favorably for plaintiff, as we must, Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 535-36, 666 A.2d 146 (1995), reveal the following. Prior to his replacement in October 1998, plaintiff had worked for Park since he was twelve or thirteen years old, some thirty-three years. It is undisputed that throughout this time, during which he first worked as a general laborer and then a machine operator, plaintiff was considered as satisfactorily performing his job.
On February 14, 1998, plaintiff was diagnosed with kidney cancer. Several days later, he underwent an operation during which the kidney, adrenal glands, lymph nodes and one rib were removed. Though disputed by Park, plaintiff asserts that while he was recuperating from his cancer surgery he had several conversations with Park's then president who was also in charge of the day-to-day operations of the *865 cemetery. During these conversations, he was told not to worry about his job and that as soon as he was able to come back to work, his job would be waiting for him.
Plaintiff remained on the payroll of Park for some ten or eleven weeks from February 15, 1998, and received a full salary during that time. In April 1998, he filed a claim for temporary disability with the New Jersey Department of Labor claiming that he would be disabled from February 15, 1998, until August 24, 1998, later revised to October 26, 1998. He received disability payments until October 26, 1998, when his doctor authorized his return to work. However, unbeknownst to plaintiff, his position was filled with a full-time employee on October 13, 1998.
According to plaintiff and his son, when plaintiff called Park's president to advise her that he could return to work, she told him:
We have a problem. My brother fired you three months ago due to the extra expenses in health benefits and because he believes you are no longer able to perform your duties due to your cancer.
At the very least, it is clear from the deposition testimony of Park's two principals that the motivating factor for replacing plaintiff was the thought that his position could no longer be kept available for him. It is undisputed that in making that determination, Park was aware of the fact that plaintiff had kidney cancer which had necessitated the surgery and recovery period.
In order to survive the motion for summary judgment, of course, plaintiff must prove "[1] that he was [handicapped], [2] that he was performing his job at a level that met his employer's legitimate expectations, [3] that he nevertheless was fired, and [4] that [the employer] sought someone to perform the same work after he left." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597, 538 A.2d 794 (1988). See also Viscik v. Fowler Equipment Co., supra, 173 N.J. at 14-15, 800 A.2d 826. Clearly the third and fourth prongs were satisfied. Though plaintiff was temporarily incapacitated, there is no evidence other than that he would have been able to return and perform his job satisfactorily such that the second prong also would survive summary judgment.
In granting the motion for summary judgment, the motion judge saw the issue as "whether a temporary inability to work while recuperating from surgery or injury is a handicap...." In concluding it was not, and that, therefore, plaintiff failed to prove the first prong of his prima facie burden, the judge relied entirely upon federal and out-of-state cases decided under the federal Americans with Disabilities Act, 42 U.S.C.A. § 12101 to 12213, the comparable federal Rehabilitation Act (RA), 29 U.S.C.A. § 701 to 797(b), and counterpart state laws, all of which require, as an element of the protected "handicap" or "disability", substantial limitation upon one's activities. See e.g. 42 U.S.C.A. § 12102(2)(A); 29 U.S.C.A. § 705(9)(B). The duration of the impairment, then, is significant under the ADA, RA, and similarly patterned state laws. E.g., 29 C.F.R. § 1630.2(j)(2)(ii); 29 C.F.R. § 1614.203(b). Because of this requirement, all of the federal and out-of-state cases cited by the motion judge do stand for the proposition that "a temporary inability to work while recuperating from surgery or an injury is not a handicap or disability." But they do so because they involve claims brought under the ADA, the RA, or comparable state statutes. Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999) (RA); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.1998), cert. denied, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999) (ADA); McDonald *866 v. Commonwealth of Penn. Dep't of Public Welfare, Polk Center, 62 F.3d 92, 96-97 (3d Cir.1995) (ADA and RA); Evans v. City of Dallas, 861 F.2d 846, 852-53 (5th Cir.1988) (RA); Wilmarth v. City of Santa Rosa, 945 F.Supp. 1271, 1276-77 (N.D.Cal.1996) (ADA); Kramer v. K & S Assoc., 942 F.Supp. 444, 446 (E.D.Mo.1996) (ADA and state anti-discrimination law which is modeled after ADA); Rakestraw v. Carpenter Co., 898 F.Supp. 386, 390-91 (N.D.Miss. 1995) (ADA); Hallgren v. Integrated Financial Corp., 42 Mass.App.Ct., 686, 688, 679 N.E.2d 259, 260 (1997) (state anti-discrimination law comparable to ADA); Imler v. Hollidaysburg American Legion Ambulance Service, 731 A.2d 169, 174 (Pa.Super.Ct.1999) (ADA and comparable state law).
The error in the judge's rationale, and in his reliance upon these federal and out-of-state cases, is that LAD's definition of handicap, and its scope, is not comparable to the definitions and scope of handicap or disability under the ADA, the RA, or comparable other state laws. As we have recently observed, "our statute is very broad and does not require that a disability restrict any major life activities to any degree." Enriquez v. West Jersey Health Systems, 342 N.J.Super. 501, 519, 777 A.2d 365 (App.Div.2001). See Viscik v. Fowler Equipment Co., supra, 173 N.J. at 16, 800 A.2d 826 ("The term `handicapped' in LAD is not restricted to `severe' or `immutable' disabilities and has been interpreted as significantly broader than the analogous provisions of the Americans with Disabilities Act."); Failla v. City of Passaic, 146 F.3d 149, 153-54 (3d Cir.1998) (jury's conclusion that plaintiff, who suffered from a back injury, was not disabled within the meaning of the ADA was not inconsistent with its finding that he had a "handicap" under the LAD); Olson v. General Elec. Astrospace, 966 F.Supp. 312, 314 (D.N.J. 1997) (rejecting the argument that the standards for demonstrating a disability under LAD require a showing of interference with a major life activity). See also Svarnas v. AT & T Communications, 326 N.J.Super. 59, 73-74, 740 A.2d 662 (App. Div.1999) (noting differences between requirements for proving disability under the ADA and "handicap" under the LAD); DeJoy v. Comcast Cable Communications, Inc., 968 F.Supp. 963, 985 (D.N.J.1997) (same); Illingworth v. Nestle U.S.A., Inc., 926 F.Supp. 482, 488 (D.N.J.1996) (same).
We turn, then, to the specific provisions of LAD. The Act broadly prohibits "any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1. "Handicapped" is defined as:
[S]uffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on service or guide dog, wheelchair, or other remedial appliance or device, or from any mental, psychological or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Handicapped shall also mean suffering from AIDS or HIV infection.
[N.J.S.A. 10:5-5(q).]
*867 This definition clearly encompasses handicapped or disabled people who do not have a substantial or permanent impairment at the time of the alleged discrimination, as early on recognized by our Supreme Court in Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 446 A.2d 486 (1982). There, plaintiff had previously suffered a serious back condition that required surgery, but he did not have significant limitations on his physical capabilities at the time of the alleged discrimination. The Court rejected an approach that would have limited coverage under LAD to severe and continuing disabilities. As the Court explained, "[w]e need not limit this remedial legislation to the halt, the maimed, or the blind.... There is simply no basis for limiting its coverage to so-called severe disabilities." Andersen, supra, 89 N.J. at 495, 446 A.2d 486. Accordingly, the Court concluded that plaintiff was "handicapped" under LAD even though he suffered only residual symptoms from his back condition and surgery at the time of the alleged discriminatory acts. See also Barbera v. DiMartino, 305 N.J.Super. 617, 633, 702 A.2d 1370 (App. Div.1997) (LAD "protects one whose handicap has disappeared by the time of the alleged discrimination.").
The motion judge's focus, here, upon plaintiff's eight-month recuperative period in the context of the first prong of the prima facie test was incorrect. We think there can be little question that cancer qualifies as a handicap under LAD. See Harris v. Middlesex County College, 353 N.J.Super. 31, 43-44, 801 A.2d 397 (App. Div.2002) (breast cancer); Blume v. Denville Township Bd. of Educ., 334 N.J.Super. 13, 41, 756 A.2d 1019 (App.Div.2000) (breast cancer). See also Cinelli v. U.S. Energy Partners, 77 F.Supp.2d 566 (D.N.J.1999) (non-Hodgkins lymphoma). Moreover, plaintiff's cancer resulted in the removal of a kidney, adrenal gland, lymph nodes and a rib. Thus, as we concluded in Harris in the context of a mastectomy, at the very least, plaintiff suffers "from disability... which is caused by ... illness... and which shall include ... any degree of ... amputation...." Harris v. Middlesex County College, supra, 353 N.J.Super. at 43-44, 801 A.2d 397.
Plaintiff, therefore, was "handicapped" at the time Park replaced him with someone else regardless of the length of the recuperative period or the temporal consequences of his cancer. As to such consequences, we take note of the following observations made by amicus curiae Division on Civil Rights:
Where, as here, the plaintiff's disability arguably affects his job performance, in order to satisfy the second element of a prima facie case, he must demonstrate that he is "otherwise qualified to perform the essential functions of the job, with or without accommodation." Leshner v. McCollister's Transportation Systems, Inc., 113 F.Supp.2d 689, 692 (D.N.J.2000) (quoting Seiden v. Marina Assocs., 315 N.J.Super. 451, 465, 718 A.2d 1230 (Law Div.1998)). Under the LAD, an employer "must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." N.J.A.C. 13:13-2.5(b). This determination of whether a proposed accommodation is reasonable, or whether it would impose an undue hardship on the employer, is made on a case-by-case basis, involving consideration of numerous factors, including the size of the employer's business, the type of operations of the employer, the nature and cost of the accommodation(s) needed, and the extent to which accommodation *868 would involve waiver of an essential requirement of a job. N.J.A.C. 13:13-2.5(b)(3).
See Svarnas v. AT & T Communications, supra, 326 N.J.Super. at 74-75, 740 A.2d 662.
But neither the second prong of plaintiff's prima facie burden nor the concept of reasonable accommodation were the basis for the summary judgment. Both, of course, arise from Park's obvious defense that plaintiff's lengthy leave of absence either rendered him incapable of performing his job or rendered Park unable to further accommodate him without undue hardship. As to the former, as we have said we think a reasonable juror could conclude that at the time Park refused to allow plaintiff back to work, he was capable of performing the job, thus removing that as a basis for summary judgment. As to the reasonable accommodation issue raised by virtue of Park's defense, that would appear to be a jury issue but we do not foreclose any further summary judgment motions. See Svarnas v. AT & T Communications, supra, 326 N.J.Super. at 80-81, 740 A.2d 662 (finding that employer was not required to accommodate employee's chronic and excessive absenteeism, even though absences were related to a disability under the LAD); Malone v. Aramark Servs., Inc., 334 N.J.Super. 669, 680, 760 A.2d 833 (Law Div.2000) (noting that "at a certain point holding a job open for an extensive or indeterminate period of time becomes unreasonable").
Reversed.