**Arnie ARMSTRONG, Plaintiff,**

v.

**BURDETTE TOMLIN MEMORIAL HOSPITAL, Richard Kraus, et al., Defendants.**

Civil Action No. 00–3441.

United States District Court,
D. New Jersey.

Aug. 13, 2003.

William B. Hildebrand, Feldman & Hildebrand, Cherry Hill, NJ, for Plaintiff.

Timothy M. Crammer, Crammer & Bishop, Absecon, NJ, for Defendants.

## OPINION ON PLAINTIFF'S MOTION FOR A NEW TRIAL

BROTMAN, District Judge.

Presently before the Court is Plaintiff's Motion for a New Trial pursuant to Fed. R.Civ.P. 59. For the reasons expressed below, Plaintiff's motion will be denied.

### I. BACKGROUND

The background and procedural history of this case have been previously documented in prior Opinions and Orders of this Court.[1] On July 17, 2000, Plaintiff Arnie Armstrong ("Plaintiff") brought this suit against his employer, Burdette Tomlin Memorial Hospital ("Burdette"), and individual Defendants Richard Kraus ("Kraus"), Edward Moylett ("Moylett"), and Barbara Young ("Young"), asserting various discrimination claims under the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1, *et. seq.*, and seeking uncompensated overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*

The first trial began on April 8, 2002. (*See* Docket Entry No. 21.) On April 9, at the close of his case, Plaintiff conceded to a dismissal of the FLSA claim on an unopposed motion pursuant to Fed.R.Civ.P. 50. (*See* Docket Entry No. 22; April 9, 2002 Tr. at 2.49:3–19.) The LAD claims were submitted to the jury which returned a verdict on April 11, 2002, finding Defendants Burdette and Kraus liable on Plaintiff's hostile work environment claim only. Judgment was entered on April 12, 2002 as follows: (1) in favor of Plaintiff and against Defendants Burdette and Kraus in the amount of $50,000 for emotional distress, mental anguish, inconvenience, and/or loss

---

1. *See* Docket Entry Nos. 41 and 42.

of enjoyment of life sustained by Plaintiff; and (2) no cause for action in favor of Defendants Moylett and Young. (*See* Docket Entry No. 24.)

Following the first trial, Defendants Burdette and Kraus ("Defendants") filed a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or alternatively, for a new trial pursuant to Fed. R.Civ.P. 59. (*See* Docket Entry No. 31.) On August 7, 2002, the Court denied the motion for judgment as a matter of law, but granted Defendants' motion for a new trial on the ground that Defendants had been denied a statutory right to a peremptory challenge. (*See* Docket Entry Nos. 41 and 42.)

After much delay, a second trial began on March 17, 2003. (*See* Docket Entry No. 50.) For this trial, Plaintiff had replaced his counsel from the first trial, Merri R. Lane, Esq. ("Attorney Lane"), with his present counsel, William Hildebrand, Esq. ("Attorney Hildebrand"). (*See* Docket Entry Nos. 45–48.) Testimony in the second trial lasted two full days and consisted of only four witnesses. (*See* Docket Entry Nos. 50–51.) In support of his case, Plaintiff presented only one witness—himself. (*Id.*) Defendants Young, Kraus, and Moylett testified for the defense. (*See* Docket Entry No. 51.)

On March 21, 2003, the jury returned a verdict of no cause and the Court entered judgment in favor of the Defendants. (*See* Docket Entry Nos. 57–58.) Specifically, the jury found the following:

**Intentional Age Discrimination Under the LAD**—(1) Plaintiff was performing his job at a level that met his employer's expectations; (2) that Defendants sought someone to perform the same work after he left; (3) that Defendants advanced a legitimate business reason

for their decision to discharge Plaintiff; and (4) that Plaintiff had not proven by a preponderance of the evidence that Defendants' business reason was a pretext for discrimination.

**Intentional Disability Discrimination Under the LAD**—(1) that Plaintiff was handicapped within the meaning of the LAD; (2) that Plaintiff was performing his job at a level that met his employer's expectations; and (3) that Plaintiff had not proven by a preponderance of the evidence that he was discharged because of his handicap.

**Failure to Accommodate Under the LAD**—(1) that Plaintiff was handicapped within the meaning of the LAD; (2) that Plaintiff was qualified to perform the essential functions of his job with or without accommodation; and (3) that Plaintiff had not proven he requested and was denied a reasonable accommodation by Defendants.

**Hostile Work Environment Under the LAD**—that Plaintiff had failed to prove the conduct which he alleged actually occurred.

*See* Docket Entry No. 57 (Jury Interrogatories).

On March 31, 2003, Plaintiff field this Motion for a New Trial. (*See* Docket Entry No. 59.) Defendants oppose Plaintiff's motion (Docket Entry No. 62),[2] which is decided without oral argument pursuant to Fed.R.Civ.P. 78.

## II. *STANDARD OF REVIEW*

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in

---

**2.** Plaintiff has not submitted a reply brief to   Defendants' opposition.

actions at law in the courts of the United States...." FED.R.CIV.P. 59(a). A trial court should grant a new trial only when the verdict is contrary to great weight of evidence, that is, if a "miscarriage of justice would result if the verdict were to stand." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir.1992) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991)); *see also* FED.R. CIV. P. 59(a)(1); Roebuck v. Drexel Univ., 852 F.2d 715, 717 (3d Cir. 1988).

While Fed.R.Civ.P. 59 does not detail the grounds on which a new trial may be granted, the following have provided grounds for granting a new trial: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F.Supp. 1180, 1186 (D.N.J. 1992), *aff'd* 4 F.3d 1153 (3d Cir.1993) (quoting *Northeast Women's Center, Inc. v. McMonagle*, 689 F.Supp. 465, 468 (E.D.Pa. 1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir.1989)); *see also Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940) (providing non-exclusive list of grounds for new trial); *Corrigan v. Methodist Hosp.*, 234 F.Supp.2d 494, 498 (E.D.Pa.2002) ("A court may also grant a new trial if the verdict was the result of erroneous jury instructions, was excessive or clearly unsupported by the evidence or was influenced by extraneous matters such as passion, prejudice, sympathy or speculation."); *Zarow–Smith v. New Jersey Transit Rail Operations, Inc.*, 953 F.Supp. 581, 584–85 (D.N.J.1997) (noting the most common reasons for granting a new trial are: (1) when the jury's verdict is against the clear weight of the evidence; (2) when newly discovered evidence would be likely to al-

ter the outcome of the trial; (3) when improper conduct by an attorney or the court unfairly influenced the verdict, or (4) when the jury verdict was facially inconsistent) (citations omitted).

■ In order for a court to grant a new trial based on a failure to give a properly requested jury instruction, the court must review the charge as a whole, in light of the evidence, to determine whether it adequately conveyed the controlling legal principles. *See Link v. Mercedes–Benz*, 788 F.2d 918, 922 (3d Cir.1986); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543–44 (11th Cir.1996); *Eastern Mt. Platform Tennis, Inc. v. Sherwin–Williams Co.*, 40 F.3d 492, 500–03 (1st Cir.1994), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 256 (1995); *Moran v. Vermeer Mfg. Co.*, 742 F.2d 456, 458–59 (8th Cir.1984). "Where a contention for a new trial is based on the admissibility of evidence, the trial court has great discretion ... which will not be disturbed on appeal absent a finding of abuse." *Link*, 788 F.2d at 921.

■ A trial court must take great care when exercising its discretion to award a new trial. *See Lightning Lube*, 802 F.Supp. at 1185; *Hulmes v. Honda Motor Co., Ltd.*, 960 F.Supp. 844, 850 (D.N.J.1997). While a court is permitted to consider the credibility of witnesses and to weigh evidence, the court must "exercise restraint to avoid usurping the jury's primary function." *Hurley v. Atl. City Police Dep't*, 933 F.Supp. 396, 403 (D.N.J. 1996); *see also Clopp v. Atl. County*, 2002 WL 31242218, *2, 2002 U.S. Dist. LEXIS 18898 *4–5 (D.N.J. Oct. 7, 2002) ("In ruling on a motion for a new trial, the trial court is permitted to consider the credibility of witnesses and to weigh the evidence."). A jury renders its verdicts based on the collective wisdom of its members:

[When a] trial judge grants a new trial on the grounds that the verdict was against the weight of the evidence, the judge ... substitutes his own judgment of the facts and credibility of the witnesses for that of the jury.... Thus, close scrutiny is required in order to protect the litigant's right to a jury trial.

*Hurley*, 933 F.Supp. at 403 (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir.1960), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)). Thus, a judge may not usurp the jury's role as factfinder "simply because the court might have come to a different conclusion." *Lightning Lube*, 802 F.Supp. at 1186 (quoting *Fineman v. Armstrong World Indus., Inc.*, 774 F.Supp. 266, 269 (D.N.J. 1991), *aff'd* 980 F.2d 171 (3d Cir.1992)). Accordingly, a "court must defer to the jury whenever its findings are reasonably supported by the record, and must draw all reasonable inferences in favor of the verdict winner." *Hulmes*, 960 F.Supp. at 850 (citing *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 372 (3d Cir.1987)).

## III. *ANALYSIS*

Plaintiff argues "a number of errors justify a new trial in this case." (Pl.'s Br. at 5.) Plaintiff gives six reasons why a new trial should be granted. (*Id.*) Specifically, Plaintiff argues: (1) the Court's jury charge on the burden of proof was improper; (2) the Court's pre-text charge was incorrect; (3) the Court erred in charging the jury on Plaintiff's failure to accommodate claim; (4) the jury interrogatories were wrong; (5) the Court should not have dismissed Plaintiff's FLSA claim; and finally (6) the Court erred in refusing to admit one of Plaintiff's proposed exhibits into evidence. (*Id.*) According to Plaintiff, each error, "singly and in combination, contributed to an unjust verdict." (*Id.* at 17.) Each of Plaintiff's arguments will be addressed below.

## A. Jury Charge and Interrogatories

### 1. *Jury Charge on Plaintiff's Burden of Proof*

■ First, Plaintiff argues the Court failed to accurately communicate the concept of preponderance of the evidence to the jury. (Pl.'s Br. at 6–7.) Specifically, Plaintiff objects to the Court's use of the statements "[t]he right of the defendants to have the plaintiff bear the required burden of proof is a substantial one and not a mere matter of form." Additionally, Plaintiff maintains it was an error for the Court not to instruct the jury in the difference between the standard of proof in civil and criminal trials.

The Court is satisfied that the jury was correctly charged with the burden of proof. In relevant part, the charge given to the jury on this issue was as follows:

Now, ladies and gentlemen, in respect to the claims in this case, *the law places upon the plaintiff the burden of proving by the greater weight of the believable testimony the truth of his allegations.* To put it another way, *the burden is upon the plaintiff to establish the nature and extent of the alleged wrongdoing and damages by a preponderance of the evidence.* The burden is not on the defendants to establish that the plaintiff is not entitled to your verdict in their favor. While proof of certainty is not required, the evidence, either direct or circumstantial, must be such as to justify an inference of probability, as distinguished from the mere possibility.

To illustrate what is meant by the phrase "proof by a preponderance of the evidence," we may visualize evidence as something weighed in an ordinary balance scale. *If the evidence the plaintiff offers in support of his claims is*

*more weighty in probative value than that offered in opposition to it that it tips the scales on the side of the plaintiff, then plaintiff has proven his claims by the preponderance of the evidence.* If, however, in weighing and evaluating the testimony adduced during the trial you come to the conclusion that the scales are evenly balanced, then it cannot be said that the plaintiff has carried the required burden of proof. *To establish by a preponderance of the evidence simply means to prove that something is more likely so than not so.* In other words, a preponderance of the evidence in the case means such evidence as when considered and compared with that opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true.

Docket Entry No. 54 at 7–9, hereinafter "Armstrong Jury Charge" (emphasis added).

In support of his motion, Plaintiff ignores the fact that the Court closely followed the models for both the federal and New Jersey civil charges on the burden of proof in civil cases. *See* FEDERAL JURY PRACTICE AND INSTRUCTION, § 104.01 (5th ed.2000); New Jersey Model Civil Jury Charge 1.12 H and I; *see also* Pl.'s Proposed Jury Instruction No. 2. Additionally, on the individual questions contained in the jury interrogatories, the jury was repeatedly reminded that Plaintiff only had to prove his case by a preponderance of the evidence. *See e.g.,* Docket Entry No. 57 (Jury Interrogatories) at A–1 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he was preforming his job at a level that met his employer's legitimate expectations?"); A–2 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that the defendants sought someone to perform the same work after he left?"); A–4 ("Do you

find, *by a preponderance of the evidence,* that the plaintiff proved that defendant's legitimate reason was a pretext for discrimination?"); B–1 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he was handicapped under the New Jersey Law Against Discrimination ('LAD')?"); B–2 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he was performing his job at a level that met his employer's legitimate expectations?"); B–3 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he was discharged because of the handicap?"); C–2 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he was qualified to perform the essential functions of the job with or without accommodation?"); C–3 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that he requested and was denied a reasonable accommodation by the defendants?"); D–1 ("Do you find that the plaintiff proved *by a preponderance of the evidence* that the conduct about which he complains of actually occurred?") (emphasis added).

Moreover, the jury was instructed to consider these instructions as a whole. Specifically, the jury was charged as follows:

> Each part or phase of the instructions is to be considered and applied together with all other parts and phases of the instructions. In other words, you must not pick out some particular instruction, and overemphasize it and apply it without considering and keeping in mind all of the other instructions given to you as the whole law of the case. Your duty in the case is to determine the facts from the evidence presented to you, and to apply the law to those facts.

Armstrong Jury Charge at 2.

Thus, in light of the Court's entire instruction, the Court is satisfied that the

jury instruction on the burden of proof did not deprive Plaintiff of fair trial.

## 2. *Pre–Text Charge*

According to Plaintiff, the Court should not have charged the jury with a *McDonnell–Douglas* burden-shifting analysis for the Intentional Age Discrimination and Intentional Discrimination claims. (Pl.'s Br. at 7–11.) In particular, Plaintiff argues that because Defendants never articulated a legitimate, non-discriminatory reason for their actions, he was entitled to an automatic verdict in his favor. (*Id.* at 8–9) (citing *Pivirotto v. Innovative Sys.*, 191 F.3d 344 (3d Cir.1999).) Additionally, Plaintiff argues his attorney was not advised by the Court that he needed to submit proposed jury charges prior to trial. (Aff. of William B. Hildebrand, ¶ 8, hereinafter "Hildebrand Aff.") Plaintiff further argues the Court failed to hold a formal "charging conference" on the proposed jury instructions prior to charging the jury. (Hildebrand Aff., ¶¶ 9–12.)

The Jury charge on pre-text was as follows:

> To prove pretext, the plaintiff must show by a preponderance of the evidence that the defendants' reason is not worthy of belief or that, more likely than not, it is not the true reason or not the only true reason for its action.

> If you find that the plaintiff has not satisfied his burden of proving that the defendants' reason is pretext, then you must return a verdict in favor of the defendants. If the plaintiff demonstrates that more likely than not, age discrimination was at least one reason for his discharge, then you must also

decide whether the consideration of age was a determinative factor in that decision.

Armstrong Jury Charge at 12–13.

After a review of the record and of applicable law, the Court finds that its charge was proper and is not a basis for a new trial. First, despite Plaintiff's eleventh-hour suggestion to the contrary, Plaintiff presented a case of alleged discrimination based on indirect proof giving rise to a *McDonnell–Douglas* analysis. Second, at trial Defendants did in fact articulate a legitimate business reasons for their actions. According to Defendants, all stock clerks needed to be cross-trained to perform the linen distribution job and needed to be able to perform all the duties of that position. (Defs.' Opp'n Br. at 8.) Defendants also maintained that the linen distribution was a lighter assignment than the distribution clerk job (*see* Defendants' Trial Exhibits D–1, D–2), a characterization Plaintiff vehemently denied.

■ Under the LAD, after a defendant puts forth a legitimate business reason for its actions,[3] the burden shifts back to the plaintiff to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employers' proffered legitimate reasons to infer that defendant did not act for the asserted non-discriminatory reasons. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994); *see also See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89, 97, 570 A.2d 903 (1990) (noting that in interpreting the LAD, courts should look to federal anti-discrimination

---

**3.** A defendant only carries the *burden of production* on this element, not the burden of proof. *See Mogull v. CB Commercial Real Estate Group, Inc.*, 162 N.J. 449, 471, 744 A.2d 1186 (2000) ("The burden of going for-

ward then shifts to the employer to rebut the presumption of undue discrimination by articulating some legitimate, nondiscriminatory reason for [its employment action].").

cases "as a key source of interpretive authority."). The standard at this stage places a "difficult burden" on the plaintiff. *Fuentes*, 32 F.3d at 765. Here, the jury found that Plaintiff simply did not present enough proof to show that Defendants' proffered non-discriminatory reason was either "a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Swider v. Ha–Lo Indus., Inc.*, 134 F.Supp.2d 607, 627 (D.N.J.2001).

Further, despite clear instructions by the Court, Plaintiff failed to submit a the requests to charge in this case. In the Jan. 21, 2003, Notice of Trial, counsel was instructed:

> Trial briefs and requests for charge **must be submitted seven (7) days** prior to the trial date....

(emphasis in original.)

■ Here, Plaintiff's counsel, Attorney Hildebrand, chose to rest on the proposed charges submitted by his predecessor, Attorney Lane.[4] (*See* Hildebrand Aff., ¶ 8; *see also* March 21, 2003 Tr. 7:5–17 (the Court noting that Attorney Hildebrand failed to submit a request for charge.)) Thus, in formulating the jury charge for this trial, the Court relied on Attorney Lane's proposed charges submitted April 1, 2002. (*See* Docket Entry No. 19.) A lawyer who fails to submit pre-trial briefs and charge requests does so at his own peril and accepts the risk of suffering serious adverse consequences. *See Trent v. Atlantic City Electrical Co.*, 334 F.2d 847, 863 (3d Cir.1964) ("It is the duty of counsel for plaintiff to see to it that each and every wholly distinct theory of liability he desires to have submitted to the jury is actually submitted to the jury."); *Stainton v. Tarantino*, 637 F.Supp. 1051, 1076 (E.D.Pa. 1986) (quoting *Trent* ).

### 3. *Failure to Accommodate Charge*

Next, Plaintiff criticizes the Court for failing to mention the term "interactive process" in its failure to accommodate charge. (Pl.'s Br. at 11–12) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir.1999) and *Jones v. Aluminum Shapes, Inc.*, 339 N.J.Super. 412, 422–23, 772 A.2d 34 (App.Div.2001).)

■ Under the LAD, an employer must make a reasonable accommodation to the limitations of an employee who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. *See Soules v. Mount Holiness Mem'l Park*, 354 N.J.Super. 569, 576–77, 808 A.2d 863 (App.Div. 2002) (citing N.J.A.C. 13:13–2.5(b)). The LAD does not specifically address the scope of what constitutes a "reasonable accommodation." *See Tynan v. Vicinage 13 of Superior Court*, 351 N.J.Super. 385, 396, 798 A.2d 648 (App.Div.2002). To determine what appropriate accommodation is necessary, the employer must initiate an informal interactive process with the employee. *Id.* "To show that an employer failed to participate in the interactive process, **a disabled employee must demonstrate:** (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated **but for** the employer's lack of good faith." *Jones*, 339 N.J.Super. at 422–23, 772 A.2d 34 (citing *Taylor*, 184 F.3d at 315–316, 319–20) (emphasis added).

**4.** According to Attorney Hildebrand, he was led to believe by his staff that the Court did not require him to make such submissions. (Hildebrand Aff., ¶ 8 and Ex. B.)

■ The determination of whether a proposed accommodation is reasonable, or whether it would impose undue hardship upon the employer, is made on a case-by-case basis, involving consideration of factors including size of the employer's business, the type of operations, the nature and cost of accommodations needed, and the extent to which the accommodation would involve waiver of an essential requirement of a job. *See Soules,* 354 N.J.Super. at 577, 808 A.2d 863 (citing N.J.A.C. 13:13–2.5(b)(3)). If an employer reasonably determines that an employee, because of handicap, could not perform the job even with an accommodation, then the employer need not attempt reasonable accommodation. *See Tynan,* 351 N.J.Super. at 397, 798 A.2d 648 (citing *Svarnas,* 326 N.J.Super. at 74–75, 740 A.2d 662).

Here, the Failure to Accommodate Charge instructed the jury as follows:

The LAD requires an employer to make a reasonable accommodation to the limitations of a handicapped employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. In order for the plaintiff to establish his failure to accommodate claim, he must show, by the preponderance of the evidence, that:

(1) he was handicapped;

(2) he was qualified to perform the essential functions of the job, with or without accommodation; and

(3) he nonetheless suffered an adverse employment action because of his disability.

It is the plaintiff's initial burden, therefore, to prove the each of these three elements by a preponderance of the evidence.

An employer's duty to accommodate an employee with a handicap extends only so far as necessary to allow the employ-

ee to perform the essential functions of his job. The term "essential functions of an employment position," as used in these instructions, means the fundamental job duties of the employment position that the plaintiff held. A job function is "essential" where the reason the position exists is to perform the function. The term "essential functions" does not include the marginal functions of the position. You may, along with all the other evidence in this case, consider the following evidence in determining the essential functions of an employment position:

1. The employer's judgment as to which functions of the job are essential;

2. Written job descriptions prepared for advertising or used when interviewing applicants for the job;

3. The amount of time spent on the job performing the function in question;

4. The consequences of not requiring the person to perform the function;

5. The terms of a collective bargaining agreement if one exists;

6. The work experience of persons who have held the job; and/or

7. The current work experience of persons in similar jobs.

Even if the individual cannot perform an essential function, the individual is deemed qualified if the essential function could be performed with some "reasonable accommodation." Thus, employers are required to make "reasonable accommodation" to the known physical or mental limitations of an otherwise disabled person unless to do so would impose an undue hardship. A reasonable accommodation may include making existing facilities used by employees readily accessible to and useable by individu-

als with disabilities. It also may include such strategies as job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment of modifications of examinations, training materials or policies, and other similar accommodations. Leaves of absence and the allowance of time-off for medical care or treatment, or to recuperate from injuries, may constitute reasonable accommodations. However, the LAD does not require an employer to provide a disabled individual with every accommodation the individual desires and does not require agreement to the employee's every demand. In addition, a reasonable accommodation does not require the employer to create a permanent, light-duty position. Rather an employer must simply make all reasonable accommodations to an employee returning from disability leave and allow the employee a reasonable time to recover from his injures.

**The plaintiff has the initial burden of proposing a reasonable accommodation and the proposal must be reasonably specific and compatible with the workplace. Accordingly, the plaintiff must prove that some reasonable accommodation was available and that he requested it.** A plaintiff is not required to prove any discriminatory animus on the part of the defendant for failure to provide reasonable accommodations. Yet, the plaintiff at all times bears the ultimate burden of persuading you, the jury, that he has been the victim of illegal discrimination.

A covered entity is not required to make an accommodation if that accommodation would impose an undue hardship on the entity's business operation. Factors to be considered in determining whether there is an undue hardship include:

1. Nature and cost of the accommodation;
2. Overall financial resources of the employer;
3. The number of persons employed at the facility; and/or
4. The type of operation or operations of the covered entity.

The impact of the proposed accommodation on other employees is also a relevant factor.

Armstrong Jury Instructions at 17–19 (emphasis added). *See also* Pl.'s Proposed Jury Instruction Nos. 13, 15–17.

The Court is satisfied that instructions on Plaintiff's Failure to Accommodate Claim was proper and that the Court clearly charged the jury that Defendants had an obligation to reasonably accommodate Plaintiff's handicap. Based on its response to the jury interrogatories, the jury found that Plaintiff either (1) failed to request a reasonable accommodation or (2) that a reasonable accommodation was not available for Defendants to give Plaintiff. *See* Docket Entry No. 57 (Jury Interrogatories) at C–3.

### 4. Jury Interrogatories

Next, Plaintiff claims the Court erred in submitting jury interrogatories which were too numerous and were "couched in indecipherable 'legalese.'" (Pl.'s Br. at 12.) Plaintiff maintains "the Court's failure and refusal to consider reducing the length of the charge and number of jury interrogatories to more closely comport with the straight-forward, uncomplicated nature of the case" are grounds for a new trial. For example, Plaintiff asserts that it was unclear and ambiguous to ask the jury whether "Plaintiff proved that Defendants' legitimate business reason was a pretext for discrimination?" (*Id.*) According to Plaintiff, "the concept of 'pretext' is diffi-

cult for lawyers and judges to understand, much less a jury." (*Id.*)

Plaintiff's assertion that the interrogatories were unclear and ambiguous and that the jury verdict must therefore be vacated is without merit. Once again, the New Jersey Model Civil Jury Charges provide for such a scenario. *See* New Jersey Model Civil Jury Charge 2.23 (providing sample jury interrogatories for discrimination cases brought under the NJ LAD). Moreover, while Plaintiff tries to characterize this case as a "straight-forward" and "uncomplicated," the case involved several Defendants, including Plaintiff's employer, Plaintiff's supervisor, and human resources managers. Thus, the interrogatories necessary to determine liability.

Moreover, although Plaintiff claims that certain elements of his case were undisputed, such as the fact that he suffered from a disability, Defendants never conceded such elements and, thus, Plaintiff had the burden of establishing his *prima facie* case at trial. *See generally* Docket Entry No. 16 (Dec. 26, 2001 Joint Final Pre–Trial Order). Additionally, as Defendants point out, since the jury found that Plaintiff did establish his *prima facie* case, any error in including the prima facie elements on the verdict sheet was harmless. *See* Docket Entry No. 57 (Jury Interrogatories) at A–1, A–2, B–1, B–2, C–1, C–2; *see also* Defs.' Opp'n Br. at 15.

Turning to Plaintiff's claim that the jury should not have been asked to determine whether he proved Defendant's business reason was a pretext for discrimination, the jury was charged on the concept of "pretext." Read together, the jury charge and corresponding interrogatory are clear and unambiguous. Specifically, the charge on "pretext" provided:

> To prove pretext, the plaintiff must show by a preponderance of the evidence that the defendants' [legitimate business] reason is not worthy of belief or that, more likely than not, it is not the true reason or not the only true reason for its action.
>
> If you find that the plaintiff has not satisfied his burden of proving that the defendants' reason is pretext, then you must return a verdict in favor of the defendants. If the plaintiff demonstrates that more likely than not, age discrimination was at least one reason for his discharge, then you must also decide whether the consideration of age was a determinative factor in that decision.

Armstrong Jury Charge at 12–13.

On a claim that the jury was erroneously instructed, the court is called on to determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury. *See Link,* 788 F.2d at 922. Having considered the jury charge and interrogatories in light of this standard, the Court finds Plaintiff's objections to be without merit and declines to vacate the judgment on the basis of the jury charge and interrogatories.

### B. Dismissal of Plaintiff's FLSA Claim

Plaintiff also assigns error to the Court's determination that Plaintiff's FLSA claim, which, in the first trial, had been dismissed prior to the case being submitted to the jury, would not be presented to the jury in the second trial. (Pl.'s Br. at 15–16; Hildebrand Aff., ¶ 6.) The cases Plaintiff relies for this assertion, however, deal with whether the question of damages can be independently submitted to a jury without considering issues of liability and are not applicable here. (*See* Pl.'s Br. at 16) (relying on *Gasoline Prods. Co. v. Champlin Refining Co.,* 282 U.S. 494, 500, 51 S.Ct.

513, 515, 75 L.Ed. 1188(131) and *Simone v. Golden Nugget Hotel & Casino,* 844 F.2d 1031, 1040–41 (3d Cir.1988)).

■ A district court may hold a partial new trial on some of the issues after a jury verdict on any of the grounds for which a complete new trial may be granted. *See* FED.R. CIV. P. 59(a); *see also Gasoline Prods.,* 283 U.S. at 500, 283 U.S. 494 (partial new trials permissible). The grant of a partial new trial is solely within the discretion of the trial court. *See Yates v. Dann,* 11 F.R.D. 386, 392–393 (D.Del.1951) (trial judge has discretion to order partial new trial as to one or more issues under Rule 59). As the court in *Yates* stated:

> The theory behind [Fed.R.Civ.P. 59 is that] a party who has already had his day in court as to a particular issue may not have another opportunity to relitigate the same point unless a partial new trial will result in a miscarriage of justice.... [Rule] 59 was intended to prevent the retrial of any issue already properly decided, and to limit any new trial only to those issues which are incorrectly decided or not decided at all.

*Id.* at 392–93.

■ At the close of Plaintiff's case in the first trial, Plaintiff **voluntarily agreed** to dismiss the FLSA claim because not evidence had been presented to support it. *See* April 9, 2002 Tr. at 2.49:3–19 (Plaintiff's counsel stating that she had no objection to Defendants' Rule 50 motion for judgment as a matter of law on the FLSA claim); *see also* August 7, 2002 Opinion at 2 (noting that "Plaintiff **conceded** to a dismissal of the FLSA claim.") (emphasis added); Defs.' Opp'n Br. at 1 ("The FLSA claim was dismissed on an **unopposed Rule 50 motion** at the close of the plaintiff's case ....") (emphasis added.) Thus, Plaintiff waived his right to submit the FLSA claim to the jury.

Furthermore, the Court's Opinion and Order is clear that the purpose of the second trial was to correct the prejudice to Defendants in the first trial. *See* August 7, 2002 Opinion and Order. According to the Order, Defendants' motion for a new trial was granted "based upon the impairment of Defendants' statutory right to exercise a peremptory challenge." August 7, 2002 Order. Contrary to Plaintiff's argument, the re-trial was not a complete "do-over" which negated the dismissal of the FLSA claims in the first trial. Accordingly, the Court did not commit a reversible error in not including Plaintiff's FLSA claim in the second trial.

## C. Exhibit P–15

■ Plaintiff finally contends that the Court erred in refusing to allow exhibit P–15 to be entered into evidence, and that this error is grounds for a new trial. (Pl.'s Br. at 16–17.) According to Plaintiff, he was somehow prejudiced by being "forced" to "draw his version of what the cart looked like." (*Id.* at 16.)

During the rebuttal phase of the trial, Plaintiff's attorney presented the Court with P 15, which he alleged was a picture of the linen cart used at the hospital, and requested it be introduced as evidence to rebut the drawing made by Defendant Kraus. (*Id.*) Defense counsel objected and the Court sustained his objection. (*Id.*) However, the Court permitted Plaintiff to draw the cart, based on his recollection of what it looked like. (*Id.*)

The Court finds no error in its determination that P–15 should not have been entered into evidence. As Defendants correctly contend, P–15 lacked adequate foundation. *See* FED.R.EVID. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in ques-

tion is what its proponent claims."). On the last day of trial, Plaintiff presented the Court with a photocopy of page from an unidentified manufacturer's catalogue which contained a picture of a linen cart. (Pl.'s Br. at 16.) Plaintiff claimed this particular linen cart was the same cart Plaintiff was forced to use at the hospital. (*Id.*)

■ The proponent of an exhibit has the burden of introducing evidence sufficient to show that the exhibit is what the proponent claims it to be. *See* FED.R.EVID. 901; *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir.1994) (proponent must show that "evidence is what its proponent claims"); *see also United States v. Hernandez–Herrera*, 952 F.2d 342, 343 (10th Cir.1991) (noting that exhibits are irrelevant unless proponent fulfills authentication requirement by introducing evidence sufficient to support finding that they are what proponent claims them to be). Here, Plaintiff did not meet this burden and the Court ruled accordingly.

■ Additionally, P–15 was never given to Defendants during the discovery phase of the case and P–15 was not listed as an exhibit in the Joint Final Pre–Trial Order issued by Magistrate Judge Rosen. *See* Dec. 26, 2001 Joint Final Pre–Trial Order at 11–12 (Plaintiff's Exhibits). Under Rule 16(e) of the Federal Rules of Civil Procedure, the Joint Final Pre–Trial Order "shall control the subsequent course of the action unless modified by a subsequent order." FED.R.CIV.P. 16(e); *see also* L. CIV. R. 16.1. Under this Rule, courts may exclude last minute evidence parties wish to present at trial. *See, e.g., Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 591 (D.N.J.1994) (upholding magistrate's decision to exclude plaintiff's expert witness from testifying as a rebuttal witness in the liability portion of a bifurcated trial).

■ Finally, even if P–15 was wrongfully excluded, the omission does not constitute a reversible error. *See* FED. R.CIV.P. 61 ("No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of a proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *Marshak v. Treadwell*, 58 F.Supp.2d 551, 556 (D.N.J. 1999) ("errors committed during the courts of a trial cannot justify the grant of a new trial unless they affected the substantial rights of the parties"), *aff'd*, 240 F.3d 184 (3d Cir.2001); *see also Becker v. ARCO Chem. Co.*, 207 F.3d 176, 205 (3d Cir.2000) ("a finding of reversible error 'may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.'") (citations omitted); *Dunn v. Owens–Corning Fiberglass*, 774 F.Supp. 929, 941 (D.Vi.), *aff'd in part and vacated in part on other grounds sub nom., Dunn v. HOVIC*, 1 F.3d 1362 (3d Cir.1993) (court's exclusion of witnesses does not necessarily require new trial).

■ Absent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict. *See Zarow–Smith v. New Jersey Transit Rail Operations*, 953 F.Supp. 581, 591 (D.N.J. 1997) (verdict upheld if justifiable); *Henry v. Hess Oil Virgin Islands Corp.*, 163 F.R.D. 237, 242–43 (D.Vi.1995) (verdict must be plausible in light of full evidentiary record). Drawing all reasonable inferences in favor of the verdict winner, the evidence presented in this trial can be characterized as "he said, they said." *See*

*Hulmes*, 960 F.Supp. at 850. On the one hand, Plaintiff claimed his supervisor, Defendant Kraus, ridiculed his disability, discounted the severity of his back problems, increased his workload, watched him more closely than other employees and took disciplinary action against Plaintiff for minor infractions. (Pl.'s Br. at 2–3.) Plaintiff further claimed that human resources managers did not believe he could not preform the essential functions of the linen job and refused his request for an accommodation. (*Id.* at 3–4). Plaintiff chose not to present evidence which would independently support his version of events, despite having to carry the burden of proof at trial and having listed ten (10) witnesses in the Joint Final Pre-Trial Order. *See* Dec. 26, 2001 Joint Final Pre-Trial Order at 7–8 (Plaintiff's Witnesses and Summary of Testimony). Thus, the only evidence Plaintiff offered was his own subjective opinion.

On the other hand, Defendants denied Plaintiff's version of events and testified that they treated Plaintiff fairly and acted lawfully. (See Defs.' Opp'n Br. at 9.) After hearing the evidence, the jury simply chose to believe Defendants' witnesses. Either individually, or taken as a whole, Plaintiff has not raised sufficient grounds for the grant of a new trial. The motion for a new trial is denied.

## IV. *CONCLUSION*

For the reasons stated herein, Plaintiffs's Motion for a New Trial will be denied. The Court will enter an appropriate Order.

## ORDER

**THIS MATTER** having come before the Court on Plaintiff's Motion for a New Trial; **THE COURT** having reviewed the record and the submissions of the parties; and

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this *13* day of August, 2003 **HEREBY**

**ORDERED** that Plaintiff's motion for a new trial is **DENIED.**

No costs.