**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3113-22

BART ALGOZZINI,

    Plaintiff-Appellant,

v.

DGMB CASINO, LLC, d/b/a
RESORTS CASINO HOTEL,

    Defendant-Respondent.

_____

Argued May 15, 2024 – Decided July 17, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0043-21.

Heidi R. Weintraub argued the cause for appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC, attorneys; Heidi R. Weintraub and Kathleen Ramalho, on the briefs).

Jennifer B. Barr argued the cause for respondent (Cooper Levenson, PA, attorneys; Jennifer B. Barr, on the brief).

PER CURIAM

Plaintiff Bart Algozzini appeals from an order granting the summary-judgment motion of his former employer, defendant DGMB Casino, LLC d/b/a Resorts Casino Hotel. While plaintiff was still on medical leave after receiving second- and third-degree burns over nearly seventy percent of his body in a boat-fuel explosion, defendant eliminated his position as Director of Slot Operations and demoted him to Slot Service Manager, a lower-salaried position. After plaintiff complained about his demotion as discriminatory and returned to work while using a cane, defendant eliminated his new position. The motion judge granted defendant's summary-judgment motion and dismissed plaintiff's claims for disability discrimination and retaliation in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, based on his finding plaintiff had failed to establish he suffered from a disability. Because a genuine issue of material fact existed as to whether plaintiff was disabled and because he did not have to prove a disability for his retaliation claim, we reverse.

I.

We draw these facts from the summary-judgment record, "view[ing] the evidence in the light most favorable to [plaintiff,] the non-moving party." Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024)

(alteration in original) (quoting Qian v. Toll Bros., Inc., 223 N.J. 124, 134-35 (2015)).

Defendant hired plaintiff as its Director of Slot Operations in October 2014. On July 17, 2019, while plaintiff was on his boat in a marina, fuel ignited. Plaintiff experienced a flash to his face and significant burns to his upper body, torso, back, and lower extremities. Plaintiff jumped into the water to extinguish the flames. He was transported to a hospital burn unit, where medical professionals treated him for second- and third-degree burns covering nearly seventy percent of his body. During a month-long hospitalization, plaintiff was placed in a medically-induced coma for over two weeks, was intubated due to respiratory insufficiency for a week, was resuscitated after a brief cardiac arrest, and underwent multiple skin-graft surgeries.

On August 24, 2019, plaintiff was transferred from the hospital to a rehabilitation facility for acute inpatient rehabilitation. On his discharge a week and a half later, plaintiff's physician noted plaintiff's "[w]ounds [were] improving" but "still require[ed] intensive nursing care" and that plaintiff was using a cane to walk. On October 24, 2019, plaintiff began outpatient physical-therapy treatment. After participating in twenty-one physical-therapy sessions, plaintiff was discharged on January 30, 2020. His physical therapist noted

plaintiff had "demonstrated improved [range of motion] and strength" but was using a cane and shower chair and continued to experience a "[d]ecreased ability to participate in home, work and leisure activities."

Before plaintiff returned to work, his supervisor, Joseph Cavilla, asked him if he would need any accommodations, including if he could "handle" stairs and what kind of "contraptions" he might be using. Plaintiff told him he was still using a cane, did not need a wheelchair or walker, and would not know more until he progressed further.

While plaintiff was still on medical leave, defendant eliminated plaintiff's position as Director of Slot Operations – which was the only position eliminated at that time – and created two new positions: Slot Service Manager and Slot Technical Manager. On or about January 10, 2020, Barbara Hulsizer, who was defendant's Equal Employment Opportunity Officer, and Cavilla met with plaintiff, advised him of the elimination of his position, and offered him the position of Slot Service Manager, which had fewer responsibilities and a salary that was $23,000 less than the salary he had received as Director of Slot Operations.

On January 29, 2020, plaintiff emailed Cavilla and Hulsizer, advising them he was shocked by the news of his demotion, believed the demotion would

be "discriminatory and against the law," and did not want to be demoted but wanted to return to his position as Director of Slot Operations on January 31, 2020. Hulsizer responded, denying the new position was a demotion and asserting defendant had eliminated his position based on an analysis of its "business needs." Plaintiff accepted the new position and returned to work on January 31, 2020. When he returned to work, plaintiff was walking with a cane.

On March 16, 2020, Governor Philip D. Murphy issued Executive Order No. 104, which, among other things, closed all casino operations effective 8:00 p.m. that day due to the outbreak of the COVID-19 pandemic. Despite the closure of the casino, plaintiff continued to work in-person for a few additional weeks to maintain compliance with certain regulations. Defendant terminated plaintiff in June 2020, when Cavilla and Hulsizer advised plaintiff defendant was not bringing him back when the casino reopened. According to Cavilla, defendant decided to "only bring back those positions that were critical at the time," at least thirty-nine other employees lost their jobs, and plaintiff's position was again eliminated, with Cavilla and other employees subsequently performing the duties of the Slot Service Manager.

On January 7, 2021, plaintiff filed a two-count complaint, claiming defendant had violated the LAD. In count one, he alleged he had suffered from

a disability as a result of the severe burns he received in the boat-fuel accident and his "demotion, salary reduction, and termination were motivated by discriminatory animus and were clearly based upon [his] disability at the time." In the second count, he alleged his "termination occurred in retaliation for his objections and/or complaints that [d]efendant[] [had] engaged in conduct in violation of the LAD."

After discovery closed, defendant moved for summary judgment. After hearing argument, the motion judge entered an order and written decision on May 9, 2023, granting defendant's motion and dismissing plaintiff's complaint with prejudice. The judge found plaintiff had failed to establish he suffered from a disability under the LAD "by competent and admissible evidence" and had failed to present a "material issue of fact." The judge reasoned:

> Plaintiff did not name an expert witness, did not provide any expert report in discovery, and did not identify any treating physician that he planned to call for fact testimony at any trial. Plaintiff provided only copies of medical leave records . . . [which t]his Court finds . . . [are] inadmissible hearsay and do[] not defeat summary judgment.
>
> . . . .
>
> Plaintiff did not establish by competent evidence any condition that prevented the typical exercise of bodily or mental functions.

The judge also held plaintiff's failure to establish he suffered from a disability meant he had failed to establish a prima facie case for retaliation under the LAD because he was not a member of a protected class.

On appeal, plaintiff argues he was not required to offer testimony from an expert or treating physician to establish he had been disabled under the LAD because his alleged physical disability was "non-complex and readily apparent" and argues the motion judge erred in finding he had failed to prove a disability, in misapplying his deposition testimony, in failing to consider certain medical records, and in declining to consider another record as hearsay. Plaintiff also argues the judge erred in finding he had to prove he was disabled and a member of a protected class in order to establish a prima facie case of retaliation under the LAD. In response, defendant argues the judge correctly granted its summary-judgment motion because plaintiff has no proof of disability.

II.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

7

challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). Summary judgment is properly granted only "when the evidence 'is so one-sided that one party must prevail as a matter of law' . . . ." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)); see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014).

Under the McDonnell Douglas[1] burden-shifting methodology for LAD discrimination claims, a plaintiff must first "come forward with sufficient evidence to constitute a prima facie case of discrimination." Meade v. Twp. of Livingston, 249 N.J. 310, 328 (2021) (quoting Henry v. Dep't of Human Servs., 204 N.J. 320, 331 (2010)). To establish a prima facie case of employment discrimination under the LAD, a plaintiff must show: 1) he was a member of a protected class; 2) his job performance met his employer's legitimate

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).

expectations; 3) he suffered an adverse employment action; and 4) the employer sought to have someone else perform the same work. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005); see also Grande v. Saint Clare's Health Sys., 230 N.J. 1, 18 (2017).

One class the LAD protects are those who are, have been, or are perceived to be disabled. See N.J.S.A. 10:5-4.1 (the LAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled") (emphasis added). The LAD defines "disability" as a

> physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy and other seizure disorders, and which shall include . . . any mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which [1] prevents the typical exercise of any bodily or mental functions or [2] is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.
>
> Players Place II Condo. Ass'n, Inc. v. K.P., 256 N.J. 472, 487 (2024) (alteration in original) (emphasis omitted) (quoting N.J.S.A. 10:5-5(q)).

To achieve the LAD's goal of "eradicat[ing] the cancer of discrimination," Meade, 249 N.J. at 327 (quoting Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 335 (2007)), courts "have recognized and given effect to [its] broad

9

remedial purposes," Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013). The LAD's "disability" definition "'has been interpreted as significantly broader than' analogous federal law." Id. at 489 (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 16 (2002)); see also Andersen v. Exxon Co., U.S.A., 89 N.J. 483 (1982) ("There is simply no basis for limiting [the LAD's] coverage to so-called severe disabilities."). The LAD does not require "that a disability 'result in substantial limitation of a major life activity.'" Players Place II, 256 N.J. at 487 (quoting Tynan v. Vicinage 13 of the Super. Ct., 351 N.J. Super. 385, 397 (App. Div. 2002)). Further, "[a]n employee perceived to have a disability is protected under the LAD to the same extent as someone who is disabled." Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 70 (App. Div. 2023) (quoting Grande, 230 N.J. at 18).

The LAD "clearly encompasses . . . disabled people who do not have a substantial or permanent impairment at the time of the alleged discrimination." Soules v. Mount Holiness Mem'l Park, 354 N.J. Super. 569, 575 (App. Div. 2002). It "protects one whose handicap has disappeared by the time of the alleged discrimination." Barbera v. DiMartino, 305 N.J. Super. 617, 633 (App. Div. 1997). In Soules we reversed an order granting summary judgment in favor of the defendants, rejecting the motion judge's finding the plaintiff had failed to

prove he was disabled under the LAD because his disability was temporary and "a temporary inability to work while recuperating from surgery for an injury is not a handicap or disability" under the LAD.  354 N.J. Super. at 573-74.

In finding plaintiff had failed to provide "competent and admissible evidence" that he suffered from a disability, the motion judge misstated the evidence plaintiff had submitted.  According to the judge, plaintiff "provided only copies of medical leave records in opposition to this motion.  Specifically, [plaintiff] provided a 'Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) form,'" which the judge found to be "inadmissible hearsay."  In fact, plaintiff also had submitted over eighty pages of medical records detailing the injuries he had sustained in the accident and the treatment he had received from the day of the accident up to the day before he returned to work.  The judge did not mention those records in his decision, much less analyze whether any of them were admissible.

The judge also mischaracterized plaintiff's deposition testimony, stating he had testified "he is not disabled and has not been disabled and accommodations at work were not needed."  In fact, plaintiff testified he did not need accommodations to perform the jobs he held elsewhere after defendant had terminated him and that on the day of his deposition, he did not need an

11

accommodation to do his job. He also testified that although in the conversation he had with Cavilla while he was out on medical leave he did not request an accommodation, he reported he was using a cane, and he was walking with a cane when he returned to work.[2] Plaintiff did not testify he "had not been disabled"; he testified about his accident, subsequent condition, use of a cane, and two-week medically-induced coma.

The judge recognized plaintiff had been injured in the accident but found he "was able to recover" and, thus, had failed to "establish a 'disability.'" That finding is not supported by the evidence. Plaintiff was still out on medical leave and had not recovered from his injuries when defendant eliminated his position and demoted him, and he was still walking with a cane when he returned to work. And with his impermissibly narrow interpretation of the LAD, the judge failed to apply correctly the law on disability discrimination under the LAD or give effect to the LAD's "broad remedial purposes." Battaglia, 214 N.J. at 546. Even if he had recovered from his injuries by the time defendant terminated his position and demoted him – and he hadn't – the LAD prohibits "any unlawful

---

[2] Citing a page in the records the judge apparently did not consider, DBr18 defendant asserts plaintiff did not "rely" on a cane when he returned to work but needed the cane only if it was "slippery out or for stairs." That assertion highlights the existence of a genuine issue of material fact.

discrimination against any person . . . [who] has been at any time disabled," N.J.S.A. 10:5-4.1, and protects individuals whose disability "has disappeared by the time of the alleged discrimination," Barbera, 305 N.J. Super. at 633.

Viewing the evidence in the light most favorable to plaintiff, as we must, see Comprehensive Neurosurgical, P.C., 257 N.J. at 71, we conclude a genuine issue of material fact exists as to whether plaintiff was a member of a protected class. A reasonable factfinder could conclude, based on plaintiff's testimony alone, that he was disabled when defendant eliminated his position and demoted him or was disabled in the months leading up to that adverse employment action. Accordingly, we reverse the order granting summary-judgment as to plaintiff's disability discrimination claim.

We also reverse the order as to plaintiff's retaliation claim. The judge granted summary-judgment to defendant on that claim based on his holding plaintiff had failed to submit sufficient evidence from which a reasonable fact-finder could conclude he was a member of a protected class as someone who was or had been disabled. That holding, for the reasons we already have stated, was wrong; it also was legally irrelevant to plaintiff's retaliation claim.

"The LAD makes it illegal '[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under

13

this act[.]'" Battaglia, 214 N.J. at 546 (alterations in original) (emphasis added) (quoting N.J.S.A. 10:5-12(d)). The judge cited Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252 (App. Div. 1996), to support his legal conclusion plaintiff first had to demonstrate he was a member of a protected class in order to establish his retaliation claim. But we didn't say that in Woods-Pirozzi. We held: "To establish a prima facie case of retaliation, plaintiff must show that 1) she was engaged in a protected activity known to the defendant; 2) she was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." Id. at 274 (emphasis added).

Defendant relies on Victor v. State, 203 N.J. 383, 408-09 (2010), but that reliance is misplaced. The Court's focus in Victor was on "whether an adverse employment consequence is an essential element of a plaintiff's claim that his employer discriminated against him by failing to accommodate his disability." Id. at 388. In dicta, the Court included "plaintiff was in a protected class" as an element of an LAD retaliation claim, citing Woods-Pirozzi, 290 N.J. Super. at 274. Victor, 203 N.J. at 409. But we didn't include membership in a protected class as an element of a LAD retaliation claim in Woods-Pirozzi, 290 N.J. Super. at 274, and the Court did not include it as an element of the claim in Battaglia,

214 N.J. at 547, which was decided three years after <u>Victor</u> and authored by the same member of the Court. In <u>Battaglia</u>, the Court held:

> When the [LAD] claim arises from alleged retaliation, the elements of the cause of action are that the employee "engaged in a protected activity known to the [employer,]" the employee was "subjected to an adverse employment decision[,]" and there is a causal link between the protected activity and the adverse employment action.
>
> [214 N.J. at 547 (quoting <u>Woods-Pirozzi</u>, 290 N.J. Super. at 274).]

Thus, the judge erred in requiring plaintiff to prove he was a member of a protected class to establish his retaliation claim under the LAD.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3113-22